[No. B215105. Second Dist., Div. Four. Sept. 28, 2010.]

JESUS FLORES et al., Plaintiffs and Appellants, v.
ENTERPRISE RENT-A-CAR COMPANY et al., Defendants and
Respondents.

COUNSEL

Steven B. Stevens for Plaintiffs and Appellants.

Rutter Hobbs & Davidoff Incorporated, Risa J. Morris and Wesley D. Hurst for Defendant and Respondent Enterprise Rent-A-Car Company.

Selman Breitman, Paul E. Stephan and Jennifer J. Capabianco for Defendant and Respondent Enterprise Rent-A-Car Company of Los Angeles.

OPINION

**WILLHITE, Acting P. J.**—In *Osborn v. Hertz Corp.* (1988) 205 Cal.App.3d 703 [252 Cal.Rptr. 613] (*Osborn*), the court held that (1) a rental car agency is not liable for negligent entrustment when it rents a car to a validly licensed driver who shows no sign of unfitness to drive (*id.* at p. 713); (2) an agency has no duty to inquire into the driving record of the renter by asking a series of questions concerning, inter alia, whether the renter has previously been convicted of driving under the influence (*id.* at p. 710); and (3) absent a legislative declaration that persons convicted of driving under the influence or whose license was previously revoked or suspended are ineligible to rent a vehicle, the rental agency is entitled to rely on the renter's presentation of a valid driver's license as sufficient evidence of fitness to drive (*id.* at p. 711).

In this case, we consider whether, in light of the availability of electronic driver's license checks, *Osborn* should be revisited so as to impose on rental car companies the duty to make an electronic search of the driving records of their customers to determine their fitness to drive. We conclude that the rationale of *Osborn* remains persuasive, and, further, that the subsequent passage of Vehicle Code section 14604[1] and the decision of the California Supreme Court in *Philadelphia Indemnity Ins. Co. v. Montes-Harris* (2006) 40 Cal.4th 151 [51 Cal.Rptr.3d 709, 146 P.3d 1251] (*Philadelphia*) demonstrate that rental car companies have no duty to conduct an electronic search of the driving records of their customers before entrusting a vehicle to them. Rather, as a matter of law, a rental car agency is not liable for negligent entrustment where the agency has fully complied with the requirements of sections 14604 and 14608, and the customer does not appear impaired or otherwise unfit to drive at the time of rental.

---

[1] All unspecified section references are to the Vehicle Code.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Complaint*

Plaintiffs Jesus and Concepcion Flores's son died after being struck by a car driven by Alexander Wadsworth Dederer, who had rented the vehicle from defendant Enterprise Rent-A-Car Company of Los Angeles (ERAC-LA). Plaintiffs sued ERAC-LA, as well as Enterprise Rent-A-Car Company (ERACC), alleging (in the operative second amended complaint) causes of action for wrongful death (a survivorship claim), negligent entrustment, and punitive damages.

According to plaintiffs, the standard of practice in the rental car industry is to screen potential renters for past convictions for driving under the influence (DUI) of drugs or alcohol, and to refuse to rent a vehicle if the customer has one conviction within the previous 48 months. Plaintiffs alleged that defendants "knew or should have known that persons with DUI convictions in the past 48 months pose[] an unreasonable risk of harm to those using the California roadways," but defendants nonetheless adopted a corporate policy of not performing electronic driver's license checks because the cost exceeded the cost of paying for losses caused by accidents involving such drivers. Plaintiffs alleged that Dederer had prior DUI convictions in the last 48 months, and that defendants should have known this information and should have declined to rent the vehicle to him.

*The Motion for Summary Adjudication Filed by ERAC-LA*

ERAC-LA filed a motion for summary adjudication of issues challenging plaintiffs' negligent entrustment cause of action. As here relevant, ERAC-LA presented evidence that through its fictitious business name of Enterprise Leasing Company of Nevada, it owned the car driven by Dederer at the time of the accident. The accident occurred when Dederer, driving the vehicle, looked down to adjust his stereo and the vehicle struck Diego Flores. Dederer presented a valid California driver's license when he rented the car and showed no signs of being under the influence of alcohol. Dederer was not under the influence of alcohol at the time of the accident, and was not charged with DUI.

Relying on *Osborn, Philadelphia,* and sections 14604 and 14608, ERAC-LA argued that it had no statutory or common law duty to screen

Dederer for prior DUI convictions, and no duty to refuse to rent to him because of his prior convictions. ERAC-LA acknowledged, however, that it could still be liable to plaintiffs based on "statutory ownership liability" pursuant to section 17150.

*The Motion for Summary Judgment Filed by ERACC*

ERACC asserted it was entitled to summary judgment for two reasons: it was neither the owner of the rental car driven by Dederer nor a party to the rental agreement, and in any event it could not be liable for failure to require ERAC-LA to conduct electronic driver's history searches because there is no legal duty to investigate the driving history of a person with a valid driver's license.

*Plaintiffs' Opposition to Defendants' Motions*

In opposition to defendants' motions, plaintiffs produced evidence regarding ERACC's analysis of the use of electronic driver's history checks, and evidence regarding other rental car companies' practices.[2] Based on this evidence, plaintiffs argued that ERACC had considered using electronic driver's history checks, but decided not to do so for economic reasons, except in the State of New York. Plaintiffs argued that ERACC made this decision despite having determined that other major rental car companies were conducting checks of drivers' histories. Plaintiffs asserted that ERACC controlled the decision whether ERAC-LA, its subsidiary, would conduct driver's license checks.

On the issue of duty, plaintiffs argued that *Osborn* was inapposite because automated driver's license checks were not then available, that *Philadelphia* was distinguishable, and that sections 14604 and 14608 do not define, as a matter of law, the duty of due care owed by a rental car agency. Rather, the jury should determine whether ERAC-LA acted as a reasonable and prudent rental car agency by deciding not to use electronic driver's history screening, which was readily available and commonly used in the industry.

Plaintiffs also produced evidence that Dederer had been convicted of DUI in August 2002 and May 2003 and that he had marijuana and the drug Ativan in his system at the time of the accident. Plaintiffs argued that defendants had failed to introduce evidence sufficient to show as a matter of law that Dederer was not under the influence of drugs at the time of the accident.

---

[2] Plaintiffs filed a motion seeking an order allowing them to file under seal certain confidential documents which were the subject of a stipulated protective order approved by the court. ERACC joined in plaintiffs' motion. The court granted the motion and placed under seal the internal business documents of ERACC that contained trade secrets.

*The Ruling*

The trial court found that defendants were entitled to judgment as a matter of law because the undisputed facts established that Dederer had a valid driver's license and gave no indication that he was unfit to drive at the time of the rental. Relying on *Osborn, Philadelphia,* and sections 14604 and 14608, the court declined to impose an additional duty on defendants to investigate customers' DMV (Department of Motor Vehicles) records. Further, the court noted that plaintiffs' wrongful death and survivorship claims were premised on the assertion that defendants negligently entrusted the vehicle to Dederer. Resolution of the negligent entrustment claim in favor of defendants therefore also defeated the remainder of plaintiffs' claims. Accordingly, the trial court entered judgment in favor of ERACC and ERAC-LA.

This appeal followed.

## DISCUSSION

### I. Rental Car Agency's Duty

██ In *Osborn, supra,* 205 Cal.App.3d 703, the court held that a rental car agency is "not negligent for entrusting a car to a person lawfully qualified and apparently fit to rent and drive it." (*Id.* at p. 713.) The court also held that an agency has no duty to ask questions to investigate the driving record of the customer, and that the agency may rely on presentation of a valid driver's license as sufficient evidence of fitness to drive, absent a legislative declaration to the contrary.

In the present case, plaintiffs contend that the trial court erred in granting summary judgment, because *Osborn* is no longer viable. According to plaintiffs, electronic driver's license checks are now available to the rental car industry, changing the way rental car companies operate such that they should be charged with the duty to make an electronic inquiry about customers' driving histories in order to screen out incompetent or unfit drivers. We conclude, however, that the availability of electronic driver's license checks does not render the rationale and holding of *Osborn* obsolete. To the contrary, *Osborn* remains persuasive. Further, developments since *Osborn*—the enactment of section 14604 and the California Supreme Court's decision in *Philadelphia, supra,* 40 Cal.4th 151—demonstrate that rental car companies have no duty to conduct an electronic search of the driving records of their customers before entrusting a vehicle to them.

*The* Osborn *Decision*

In *Osborn*, a passenger in a rental car was injured when the driver, to whom the car had been rented, drove the car into a tree while under the influence of alcohol. The passenger sued the rental car agency for negligently entrusting the car to the driver, asserting that the agency was negligent for failing to do more than inspect his driver's license and observe that he appeared sober at the time of the rental. The passenger argued that the agency had a further duty to investigate the driver's qualification by asking him whether he had a record of DUI, whether his license had ever been suspended, whether he had ever been denied automobile insurance, and whether he intended to drive under the influence. Had it conducted such an investigation, the passenger argued, the company would have discovered that the driver had been twice convicted of drunk driving (most recently seven years before) and that his license had been suspended for six months. (*Osborn, supra*, 205 Cal.App.3d at p. 706.)

The appellate court in *Osborn* affirmed the trial court's grant of summary judgment in favor of the rental car agency. The court observed that " '[i]t is generally recognized that one who places or entrusts his [or her] motor vehicle in the hands of one whom he [or she] knows, or from the circumstances is charged with knowing, is incompetent or unfit to drive, may be held liable for an injury inflicted by the use made thereof by that driver, provided the plaintiff can establish that the injury complained of was proximately caused by the driver's disqualification, incompetency, inexperience or recklessness . . . .' " (*Osborn, supra*, 205 Cal.App.3d at p. 708.) As applied to a rental car agency, the court in *Osborn* noted that "section 14608 prohibits . . . renting to unlicensed drivers" and "[a] rental car agency may therefore be liable for negligently entrusting a car to an unlicensed driver." (*Id.* at p. 709.)[3] Moreover, the court endorsed the view of "[o]ther jurisdictions [that] have sensibly recognized a rental car agency may be liable for negligently entrusting a car to a customer known to the agency to be

---

[3] Section 14608 provides:

"No person shall rent a motor vehicle to another unless:

"(a) The person to whom the vehicle is rented is licensed under this code or is a nonresident who is licensed under the laws of the state or country of his or her residence.

"(b) The person renting to another person has inspected the driver's license of the person to whom the vehicle is to be rented and compared the signature thereon with the signature of that person written in his or her presence.

"(c) Nothing in this section prohibits a blind or disabled person who is a nondriver from renting a motor vehicle, if both of the following conditions exist at the time of rental:

"(1) The blind or disabled person either holds an identification card issued pursuant to this code or is not a resident of this state.

"(2) The blind or disabled person has a driver present who is either licensed to drive a vehicle pursuant to this code or is a nonresident licensed to drive a vehicle pursuant to the laws of the state or country of the driver's residence."

intoxicated at the time of the rental." (*Osborn, supra,* 205 Cal.App.3d at p. 709.) But the court found no basis on which to require rental companies to investigate the driving history of their customers.

The court reasoned that such an investigation would not lead to useful information, because even if the rental car agency learned that the customer had previously been convicted of DUI, that fact in itself would not have made the rental car agency negligent in renting a vehicle to the customer. (*Osborn, supra,* 205 Cal.App.3d at p. 710.) More importantly, the court observed that through the statutes governing DUI, "the Legislature has carefully delineated, according to the seriousness of the offenses, the disabilities that are to be suffered by those convicted of drunk driving," including "suspension or revocation of a driver's license for various periods of time. [Citation.] Under this statutory scheme, neither a prior record of drunk driving nor a past refusal of insurance nor a prior suspension or revocation of a driver's license disqualifies a citizen from owning or driving a vehicle provided the legal disability has been cured and the citizen holds a valid driver's license." (*Id.* at pp. 710–711.) Finding that "this detailed statutory scheme reflects a careful balance . . . between the dangers of drunk driving and the recognition that driving a car may be 'essential in the pursuit of a livelihood,' " the court declined to adopt a rule that would disqualify persons previously convicted of drunk driving, but whose licenses have been reinstated, from renting cars. (*Id.* at p. 711.)

In response to the contention that "car rentals involve an especially high degree of risk to the public," the court responded: "The practical effect of plaintiff's proposed rule would be to make it impossible for anyone previously convicted of drunk driving, or whose license was once suspended, from renting a car. However, rental cars play an indispensable role in contemporary American business. The proposed rule would impose a severe hardship on countless responsible citizens who were once convicted of vehicle offenses and who depend on rental cars to do their jobs. If the past legal transgressions cited by plaintiff should disqualify citizens from driving rental cars, the Legislature should say so. Absent such legal disqualification, defendant was entitled to rely upon [the driver's] valid driver's license as sufficient evidence of his ability to drive." (*Osborn, supra,* 205 Cal.App.3d at p. 711, fn. omitted.) The court concluded that, as a matter of law, the rental car agency was not negligent for entrusting a car to a customer who presented a valid driver's license and showed no signs of unfitness to drive. (*Id.* at p. 713; see also *Lindstrom v. Hertz Corp.* (2000) 81 Cal.App.4th 644, 650 [96 Cal.Rptr.2d 874] [agreeing with *Osborn* in the context of a customer who

presented a valid foreign driver's license and concluding that "[i]t is for the Legislature, not the courts, to determine whether tort liability should be based on an individual's membership in a class" of foreign drivers].)

Although rental car companies now have the ability to gain access to computerized records of their customers' driving histories, the rationale of *Osborn* remains valid. True, such a check might show, for instance, a previous conviction of DUI, but as a policy matter we question whether, based solely on that information, a rental car agency should be deemed to have violated its duty of due care if it rents a car to that customer. Plaintiffs' argument in the present case, like the argument made by the passenger in *Osborn*, contains the implicit premise that a conviction of DUI disqualifies a person from renting a vehicle, even though the person currently possesses a valid license. As the court in *Osborn* reasoned, such a rule would "disturb [the] carefully considered balance" "struck by the Legislature between the dangers of drunk driving and the recognition that driving a car may be 'essential in the pursuit of a livelihood.' " (*Osborn, supra*, 205 Cal.App.3d at p. 711.) Thus, *Osborn*'s conclusion that rental car companies have no duty to inquire into the driving histories of their clients remains viable, as applied to the instant case.

Two events since *Osborn* convince us of the soundness of its reasoning. The first is the enactment of section 14604, which further defined the obligation of rental car companies in a manner consistent with *Osborn*. Enacted six years after *Osborn* (Stats. 1994, ch. 1221, § 14, p. 7565), section 14604 was "part of an overall legislative effort to address the serious public safety danger posed by unlicensed drivers and drivers with suspended or revoked licenses." (*Philadelphia, supra*, 40 Cal.4th at p. 162.) The statute prohibits a vehicle owner (including a rental company) from entrusting a vehicle to an unlicensed driver, and circumscribes the duty of an owner to determine the driver's license status. It provides: "(a) No owner of a motor vehicle may knowingly allow another person to drive the vehicle upon a highway unless the owner determines that the person possesses a valid driver's license that authorizes the person to operate the vehicle. For the purposes of this section, an owner is required only to make a reasonable effort or inquiry to determine whether the prospective driver possesses a valid driver's license before allowing him or her to operate the owner's vehicle. *An owner is not required to inquire of the [Department of Motor Vehicles] whether the prospective driver possesses a valid driver's license. [¶] (b) A rental company is deemed to be in compliance with subdivision (a) if the company rents the vehicle in accordance with Sections 14608 and*

*14609.*"[4] (Italics added.) Section 14608 provides in relevant part that "[n]o person shall rent a motor vehicle to another unless" the renter is "licensed under this code" or under the law of another state or country of residence (subd. (a)), and "[t]he person renting to another person has inspected the driver's license of the person to whom the vehicle is to be rented and compared the signature thereon with the signature of that person written in his or her presence" (subd. (b)).

 Taken together, sections 14604 and 14608 provide, in substance, that a rental car agency is prohibited from renting a car to an unlicensed driver, and must "make a reasonable effort" to determine whether the prospective driver possesses a valid driver's license. But that reasonable effort does not include checking DMV records. It is sufficient for the rental car agency to comply with section 14608 by examining the license, and comparing the signature on the license to one written by the prospective renter in the presence of the rental company's agent.[5] The legislative declaration that rental car agencies are not required to check DMV records to investigate the validity of a customer's license implicitly means they are also not required to check DMV records to investigate the driving history that may be relevant to that license status.

Indeed, that is precisely the conclusion reached by the California Supreme Court in *Philadelphia* when it considered the effect of sections 14604 and 14608 on the scope of an excess liability insurer's assumed duty to investigate the insurability of rental car customers. The context of *Philadelphia*, and the reason its analysis is compelling here, requires some explanation.

In *Philadelphia*, the rental car agency rented a car to a customer who presented what appeared to be a valid Arizona driver's license. The agency complied with its duty under section 14608 by inspecting the renter's license and verifying the signature. But, in fact, the license had been suspended two months earlier. The customer also purchased excess liability insurance coverage through the agency's master excess policy of supplemental liability insurance (the renter was enrolled as an additional insured under the master policy). (*Philadelphia, supra,* 40 Cal.4th at pp. 155–156.) The policy excluded coverage for injuries arising from the use of a rental car obtained through fraud or misrepresentation. (*Id.* at p. 156.)

Four days after renting the vehicle, the renter was involved in an accident in which several persons were injured. (*Philadelphia, supra,* 40 Cal.4th at

---

[4] Section 14609 requires those renting a motor vehicle to another person to keep a record of the vehicle's registration number, the name and address of the renter, and the renter's driver's license number, expiration date, and issuing jurisdiction.

[5] The rental car agency also must record certain information regarding the driver's license (§ 14609), but ERAC-LA's compliance with that requirement is not at issue here.

p. 156.) Some of the injured persons sued the rental car agency in state court for injuries arising out of the accident. (*Ibid.*) Meanwhile, the excess insurer brought a collateral declaratory relief proceeding in federal court seeking a declaration that the insurer had no liability for damages arising out of the accident. Finding that the renter had misrepresented the validity of his driver's license, and that the policy excluded coverage for rentals obtained by misrepresentation, the federal district court ruled that the excess insurer was not obligated to provide coverage. (*Ibid.*)

Through proceedings not relevant here, the Ninth Circuit requested the California Supreme Court to decide whether "the duty of an insurer to investigate the insurability of an insured, as recognized . . . in *Barrera v. State Farm Mut. Automobile Ins. Co.* (1969) 71 Cal.2d 659 [79 Cal.Rptr. 106, 456 P.2d 674] . . . , appl[ies] to an automobile liability insurer that issues an excess liability insurance policy in the context of a rental car transaction." (*Philadelphia, supra*, 40 Cal.4th at p. 155.) The Supreme Court, rather than deciding whether the general duty under *Barrera* to investigate insurability applies to excess automobile liability insurers, assumed that such a duty exists. But the court concluded as a matter of law that the excess insurer did not breach its assumed duty, and did not forfeit its contractual rights under the policy exclusion for accidents caused by a vehicle rented through fraud or misrepresentation. (*Id.* at p. 161.) The court's specific holding was "that where, as here, the sale of excess liability insurance in a rental car transaction occurs after the rental car customer presents a facially valid driver's license and after the license inspection and signature verification requirements of . . . section 14608, subdivision (b), have been met, the excess insurer has no obligation to conduct a further inquiry regarding the validity of the customer's driver's license. In such a situation, if the excess insurer acts promptly upon discovery that the customer's facially valid driver's license was in fact suspended, then the excess insurer does not forfeit any statutory or contractual right to rely on the customer's presentation of the invalid license as a basis for avoiding liability to third persons under the excess policy." (*Id.* at p. 155.)

The precise holding of *Philadelphia* does not apply here, and the context in which the decision arose—whether an automobile excess liability insurer breached its assumed duty to investigate the insurability of the rental car customer who purchased the excess insurance—is different. But because the court's analysis relied on sections 14604 and 14608, and because it placed the excess insurer for analytical purposes in the shoes of the rental car agency (the rental company being the agent of the insurer), the analysis is instructive in defining the duty of investigation that must be undertaken by a rental car agency before entrusting a vehicle to a customer.

█ The court stated that "the statutory provisions addressing vehicle use by unlicensed drivers [including sections 14604 and 14608] represent a legislatively expressed public policy to provide protection to members of the public upon the streets and highways." (*Philadelphia, supra*, 40 Cal.4th at p. 161.) Referring to section 14604 specifically, the court noted that it "prohibits an owner of a motor vehicle from knowingly allowing another person to drive its vehicle without first determining that the person possesses a valid and appropriate driver's license," but "specifies . . . that 'an owner is required only to make *a reasonable effort or inquiry*' in this determination and 'is *not* required to inquire of the [DMV] whether the prospective driver possesses a valid driver's license.' " (40 Cal.4th at p. 161, original italics, quoting § 14604, subd. (a).) As applied to a rental car agency, the court observed that section 14604, subdivision (b), "further clarifies that [the agency] 'is deemed to be in compliance' with the reasonable-effort-or-inquiry mandate of the foregoing provision if, before renting to a person, it visually inspects the person's driver's license and verifies the person's signature in accordance with section 14608." (40 Cal.4th at p. 162.)

Explaining the import of these provisions, the court stated: "Significantly, the enactment of section 14604 in 1994 was part of an overall legislative effort to address the serious public safety danger posed by unlicensed drivers and drivers with suspended or revoked licenses. *Because section 14604 specifically addresses rental car situations, that provision is reasonably viewed as reflecting a legislative policy decision that, given the unique nature and operational constraints of the rental car business, compliance with the inspection duties set forth in section 14608, subdivision (b), is an appropriate safeguard against the problem of unlicensed drivers in the rental car context.* Thus, when an insurer makes its excess liability insurance available to a rental car customer only after the rental car agent complies with the license inspection and signature verification requirements of section 14608, subdivision (b), the excess insurer conducts its business in a manner that is fully consistent with what the Legislature views as a 'reasonable effort or inquiry to determine whether the prospective driver possesses a valid driver's license' in the rental car context." (*Philadelphia, supra*, 40 Cal.4th at p. 162, fns. omitted, italics added.)

The court also addressed the question whether a rental car agency, as an agent of the excess insurer, should be required to perform license checks through the DMV. Although the injured plaintiffs in the underlying state action ("claimants" in the particular proceeding before the court in *Philadelphia*) suggested such a measure, they "acknowledged that allowing private companies access to DMV records may raise grave concerns about the privacy rights of rental customers, and also may cause congestion of DMV's computer systems and delay for rental car companies and their customers." (*Philadelphia, supra*, 40 Cal.4th at pp. 162–163.) The court "note[d] the

further concern that such factors, coupled with the costs of implementing such access, also may reduce the availability of excess liability insurance or deter its purchase." (*Id.* at p. 163, fn. 9.) The court concluded that "[b]ecause the Legislature has not seen fit to require DMV license checks or other specific investigatory measures on the part of an owner and typical provider of mandatory coverage in the rental car context, we shall decline to judicially impose such obligations on the offeror of optional excess coverage for purposes of preserving its rights to rescind an excess policy or invoke an exclusion clause based on a rental car customer's presentation of a facially valid but suspended driver's license. *Moreover, while the Legislature might consider after this opinion whether further investigation should be required of a rental car company, and by extension an excess insurer, we remain mindful that the Legislature stands in the best position to identify and weigh the competing consumer, business, and public safety considerations that present themselves in the rental car context.*" (*Id.* at p. 163, italics added.)

■ We take from the reasoning of *Philadelphia* two salient points. The first is that through section 14604, the Legislature has balanced the danger caused by those who drive with revoked or suspended licenses against "the unique nature and operational constraints of the rental car business" (*Philadelphia, supra*, 40 Cal.4th at p. 162), and made the policy decision that the scope of a rental car agency's "reasonable effort or inquiry" into the license status of its customers (§ 14604, subd. (a)) is limited to performing the tasks required by section 14608, subdivision (b): "inspect[ing] the driver's license of the person to whom the vehicle is to be rented and compar[ing] the signature thereon with the signature of that person written in his or her presence." The rental car agency is not required to make a DMV check of the customer's license status. (*Philadelphia, supra*, 40 Cal.4th at p. 163; § 14604, subd. (a).) Second, because of this specific policy decision, and because the Legislature is better suited to "weigh the competing consumer, business, and public safety considerations that present themselves in the rental car context" (*Philadelphia, supra*, 40 Cal.4th at p. 163), any expansion of the duty of investigation imposed on rental car agencies is a matter for legislative, not judicial, action. Significantly, despite *Philadelphia*'s invitation to the Legislature to require rental car agencies to perform further investigation, the Legislature has not changed the relevant statutes.[6] The absence of statutory changes suggests that the Legislature approves the Supreme Court's reasoning. (See *People v. Meloney* (2003) 30 Cal.4th 1145, 1161 [135 Cal.Rptr.2d 602, 70 P.3d 1023].)

---

[6] The Legislature has since amended other sections within the chapter of the Vehicle Code regarding violation of license provisions, in which sections 14604, 14608 and 14609 are located (see, e.g., §§ 14601.5, 14602.6, 14602.8), but none of these amendments have any bearing on the issues discussed here.

 Consistent with *Philadelphia*, we conclude that through sections 14604 and 14608 the Legislature has circumscribed the duty of a rental car agency to investigate the license status (and, by implication, the driving history) of its customers. That duty does not extend to making an electronic check of customers' driving records. Any decision to extend a rental car agency's duty of investigation to include such a search is for the Legislature, not the courts. As a matter of law, therefore, a rental car agency is not liable for negligent entrustment where the agency has fully complied with the requirements of sections 14604 and 14608, and the customer does not appear impaired or otherwise unfit to drive at the time of rental. In short, *Osborn*, reinforced by section 14604 and *Philadelphia*, remains good law.

Finally, we address *Snyder v. Enterprise Rent-A-Car, San Francisco* (N.D.Cal. 2005) 392 F.Supp.2d 1116 (*Snyder*), which plaintiffs cite for the proposition that it cannot be determined as a matter of law whether a reasonably prudent rental car agency would check DMV records and refuse to rent based on the information learned. In *Snyder*, the defendant rental car agency rented a vehicle to a person whose license was suspended. Driving the vehicle under the influence of alcohol, he struck and killed the plaintiffs' daughter. (*Id.* at p. 1120.) The plaintiffs sued the rental car agency for, inter alia, negligent entrustment under California law, and both sides moved for summary judgment/summary adjudication. As here relevant, the plaintiffs argued that on a common law negligence theory they were entitled to summary adjudication whether the rental agency was negligent in entrusting the vehicle to the driver. They relied in part on evidence that rental car agencies can check the current status of a license by using an electronic verification system, and argued that an ordinarily prudent person in the rental agency's position would not have made the rental without conducting such a check. (*Id.* at p. 1127.) The district court ruled that the plaintiffs were not entitled to summary adjudication on the issue of negligent entrustment, because "whether a person of ordinary prudence, in the same situation, would have taken the same or different action cannot be resolved as a matter of law. For example, there is conflicting evidence as [to] whether the use of DMV verification programs is standard practice within the rental car industry in California or elsewhere." (*Id.* at p. 1127.)

In denying that portion of the rental car agency's cross-motion for summary judgment directed at punitive damages, the court ruled that the plaintiff's evidence "would be sufficient to support a finding that defendants were aware that, in the absence of taking any step to verify license validity, they would inevitably rent vehicles to persons who were not licensed, and that defendants chose to run the risk that the losses caused by such drivers being involved in accidents would be less than the cost of verifying licenses. In other words, plaintiffs' evidence is sufficient to support a finding that defendants were 'aware of the probable dangerous consequences of [their]

conduct, and that [they] willfully and deliberately failed to avoid those consequences.' " (*Snyder, supra,* 392 F.Supp.2d at p. 1130, fn. omitted.)

To the extent *Snyder* suggests that under California law the question whether a rental car agency need make an electronic check of DMV records is a question of fact for the jury and cannot be determined as a matter of law by the court, we disagree. We do not believe that *Snyder* gives adequate consideration to the import of sections 14604 and 14608. Indeed, *Snyder* was decided before the Supreme Court's decision in *Philadelphia,* which, as we have discussed, effectively dispels the notion that California law requires a rental car agency to inquire of the DMV about customers' driving records. We therefore find *Snyder* not persuasive.

In light of our conclusion regarding the scope of a rental car agency's duty, the only remaining issue we must address is whether the trial court properly entered judgment in favor of ERAC-LA, after it moved only for summary adjudication of issues.[7]

## II. Additional Statutory Ground for Vehicle Owner's Liability

Plaintiffs point out that ERAC-LA moved for summary adjudication of issues only, not summary judgment. In fact, ERAC-LA conceded in its moving papers that it remained potentially liable under section 17150 as the owner of the vehicle whose driver struck and killed plaintiffs' son.[8] Nevertheless, the trial court granted summary judgment in its favor. Plaintiffs contend on appeal that the trial court erred in doing so.

In response, ERAC-LA argues that, even if the trial court erred in granting summary judgment, plaintiffs were not prejudiced because no further recovery would be available on remand because plaintiffs have settled their case as to Dederer for payment of the statutory maximum available from Dederer and ERAC-LA jointly.[9] ERAC-LA filed a request that we take judicial notice of

---

[7] The issues we need not discuss include (1) whether plaintiffs adequately demonstrated that the standard in the rental car industry is to use electronic DMV checks; and (2) issues of causation, such as whether Dederer was or was not impaired at the time of the accident, and whether a driver with prior license suspensions poses a foreseeable risk of harm to the driving public.

[8] Section 17150 provides: "Every owner of a motor vehicle is liable and responsible for death or injury to person or property resulting from a negligent or wrongful act or omission in the operation of the motor vehicle, in the business of the owner or otherwise, by any person using or operating the same with the permission, express or implied, of the owner."

[9] Section 17151, subdivision (a), limits the liability of an owner (not arising through the relationship of principal and agent or master and servant) to $15,000 for the death or injury of one person.

documents indicating that Dederer and plaintiffs settled the matter for $15,000 shortly after judgment was entered in favor of the Enterprise defendants. We granted the request.

■ Where a vehicle's operator settles the claim of a third party injured due to the operator's negligence for a sum equal to, or in excess of, the amount of the vehicle owner's statutory liability for the operator's negligence, the owner's obligation is discharged. (*Rashtian v. BRAC-BH, Inc.* (1992) 9 Cal.App.4th 1847, 1853 [12 Cal.Rptr.2d 411].) Because the documents of which we take judicial notice sufficiently establish that Dederer settled with plaintiffs for $15,000, there can be no statutory liability remaining to be claimed against ERAC-LA. Thus, it would be an idle act to remand the matter to the trial court based on error in the court's granting summary judgment rather than summary adjudication.

" '[W]here matters of which the court has judicial knowledge occur subsequent to the trial court's action and have the effect of destroying the basis for the plaintiff's cause of action, it has been held that the appellate court may dispose of the case upon those grounds.' " (*City of National City v. Wiener* (1992) 3 Cal.4th 832, 850 [12 Cal.Rptr.2d 701, 838 P.2d 223] (conc. opn. of Baxter, J.), quoting *International etc. Workers v. Landowitz* (1942) 20 Cal.2d 418, 423 [126 P.2d 609], citing *Sewell v. Johnson* (1913) 165 Cal. 762, 769 [134 P. 704].) Plaintiffs' postjudgment settlement with Dederer foreclosed any further action pursuant to section 17150, and we therefore dispose of plaintiffs' contention of error on those grounds. Any error in the court's granting summary judgment was harmless, a conclusion that plaintiffs appear to have conceded given their omission of any reference to the matter in their reply brief on appeal.[10]

---

[10] We note that Code of Civil Procedure section 437c, subdivision (m)(2) provides: "Before a reviewing court affirms an order granting summary judgment or summary adjudication on a ground not relied upon by the trial court, the reviewing court shall afford the parties an opportunity to present their views on the issue by submitting supplemental briefs. The supplemental briefing may include an argument that additional evidence relating to that ground exists, but that the party has not had an adequate opportunity to present the evidence or to conduct discovery on the issue." However, providing the parties with an opportunity to submit supplemental briefing pursuant to this provision is not warranted here. In February 2010, ERAC-LA filed its request that we take judicial notice of the documents indicating the Floreses settled with Dederer for $15,000, and also filed its respondent's brief in which it argued that the Floreses suffered no prejudice as a result of the court's granting summary judgment because no further recovery from ERAC-LA would be permissible. The Floreses had the opportunity to present their views on the issue in their reply brief filed thereafter, and to argue that additional evidence relating to the issue existed, but the Floreses did not do so. We take their silence on the matter as acquiescence that they were not prejudiced by the court's granting summary judgment because no further recovery would be permissible pursuant to sections 17150 and 17151.

## DISPOSITION

The judgments entered in favor of defendants are affirmed. Defendants shall receive their costs on appeal.

Manella, J., and Suzukawa, J., concurred.