Filed 10/6/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ENTERPRISE RENT-A-CAR OF LOS ANGELES,<br><br>        Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF THE COUNTY OF LOS ANGELES,<br><br>        Respondent;<br><br>DONARA GRIGORYAN,<br><br>        Real Party in Interest. | B321016<br><br>(Los Angeles County Super. Ct. No. BC654195) |

        ORIGINAL PROCEEDINGS; petition for writ of mandate. David A. Rosen, Judge. Petition granted.
        Polsinelli, Wesley D. Hurst, J. Alan Warfield, and Stephanie L. Bowlby for Petitioner.
        Mgdesyan Law Firm, George Gevork Mgdesyan, and Araksya Boyadzhyan for Real Party in Interest.

## INTRODUCTION

Vehicle Code[1] section 14608 provides, in relevant part: "(a) A person shall not rent a motor vehicle to another person unless both of the following requirements have been met: [¶] (1) The person to whom the vehicle is rented is licensed under this code or is a nonresident who is licensed under the law of the state or country of his or her residence. [¶] (2) The person renting to another person has inspected the driver's license of the person to whom the vehicle is to be rented and compared either the signature thereon with that of the person to whom the vehicle is to be rented or the photograph thereon with the person to whom the vehicle is to be rented."

In this case of first impression, we consider whether section 14608 imposes a duty on a rental car agency to investigate a prospective renter's residence status when he or she, at the time of rental, provides the agency with: (1) a facially valid foreign driver's license; and (2) a local California address on the rental paperwork. We decide it does not. As discussed further below, requiring a rental car agency to investigate whether a prospective renter who presents a facially valid foreign driver's license is still a resident of that jurisdiction at the time of rental goes beyond the scope of duties prescribed by the Legislature.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2015, Donara Grigoryan was injured in a car accident involving a rental car driven by Izat Murataliev. Harutyan Ajaryan rented the car involved in the accident from Enterprise

---

1       All further undesignated statutory references are to the Vehicle Code.

Rent-A-Car Company of Los Angeles (ERAC-LA). Murataliev was listed as an additional authorized driver in the rental agreement between Ajaryan and ERAC-LA. At the time of rental, Murataliev presented ERAC-LA with a facially valid driver's license issued by Kyrgyzstan, and a local California address on the rental paperwork.

Grigoryan sued ERAC-LA, Murataliev, and EAN Holding, LLC (EAN) for negligence.[2] Specifically, Grigoryan alleged ERAC-LA negligently entrusted Murataliev with the rental vehicle, and therefore proximately caused her injuries.

ERAC-LA moved for summary judgment on Grigoryan's claim against it for negligent entrustment, arguing the claim failed as a matter of law because ERAC-LA complied with section 14608. Grigoryan opposed the motion, arguing Murataliev was a resident of California, and the visual inspection of a foreign license does not satisfy the requirements of section 14608. Rather, she contended ERAC-LA was required to determine whether Murataliev was still a resident of Kyrgyzstan to comply with section 14608. Grigoryan further argued material factual disputes exist regarding ERAC-LA's inspection of Murataliev's foreign driver's license.

At the hearing on the motion, the trial court requested supplemental briefing regarding whether ERAC-LA had a duty under section 14608, subdivision (a)(1) to determine whether the prospective renter is a "California resident or not at the time of

_____

2      Murataliev died while this case was pending in the trial court. Grigoryan subsequently added Murataliev's estate as a defendant. EAN owned the rental vehicle. The trial court granted EAN's motion for summary judgment on grounds not relevant to ERAC-LA's petition.

the rental." The trial court explained that issue was determinative of the case: "Now, [section] 14608 [subdivision] (a)(2) talks about a requirement that the rental agency inspect the renter's driver's license and . . . determine whether it's facially valid, either by comparing signatures or comparing photograph [of] face [to] in-person face. There's no dispute here about [section] 14608 [subdivision] (a)(2), and there's no dispute as far as I can see that the defendants complied with it. [¶] . . . [ERAC-LA] confirmed that Murataliev[,] the person with the license[,] was Murataliev the person in the shop. So it all focuses – the inquiry for the briefing focuses on [section] 14608 [subdivision] (a)(1)."

After considering the supplemental briefing, the trial court denied ERAC-LA's motion, finding that "where, as here, a prospective renter provides a local address and a foreign driver's license which is otherwise facially valid, . . . it is the duty of the rental agency, per [section 14608, subdivision (a)(1)], to inquire at the rental transaction how long the prospective renter has resided locally. Then, and only then, can the rental agency determine within the bounds of its statutory duty, whether the prospective renter has presented a valid driver's license."

ERAC-LA filed a petition for writ of mandate in this court to reverse the trial court's order denying its motion for summary judgment. We issued an alternative writ ordering the court to either: (1) after notice of the parties and an opportunity to be heard, vacate the May 24, 2022 order denying ERAC-LA's motion for summary judgment and enter a new order granting the motion on the ground that ERAC-LA has no duty under section 14608 to inquire into a person's length of stay in California; or, in the alternative (2) show cause why a peremptory writ of mandate

4

should not issue. In response to the alternative writ, the trial court issued an order providing Grigoryan an opportunity to file a brief responding to the trial court's intention to comply with the alternative writ by vacating its order denying ERAC-LA's motion for summary judgment and entering a new order granting the motion. The order also provided ERAC-LA an opportunity to file a reply brief to Grigoryan's response.

After the parties submitted their briefs, the trial court issued a new order declining our "invitation . . . to change its ruling of May 24, 2022." The court stated: "The issue before the court appears to be a case of first impression; the narrow issue as to whether [section 14608, subdivision (a)(1)] places a duty upon a rental agency to inquire into the renter's residence so as to determine if [the] renter satisfies the requirement to have a facially valid California driver's license ('under this code') or a facially valid foreign driver's license ('from the jurisdiction where he resides') by and through its express reference to same." In holding the rental car agency has a duty to inquire into the prospective renter's residence, the court explained: "Here, the prospective renter presented only a facially valid Kyrgyzstan driver's license and a local California address. Thus, the rental agency could not, without asking the renter/decedent at least one more question; to wit, 'how long have you lived at this local address?' fulfill its duty to determine whether decedent had a valid driver's license under the California vehicle code, or whether decedent's facially valid Kyrgyzstan license was acceptable because that is where he lived at the time of rental. It

is this determination that the rental agency is also required to make under [section 14608, subdivision (a)(1)]."[3]

## DISCUSSION

### A.    Rental Car Agency's Duties

Section 14604, subdivision (a) provides: "No owner of a motor vehicle may knowingly allow another person to drive the vehicle upon a highway unless the owner determines that the person possesses a valid driver's license that authorizes the person to operate the vehicle. For the purposes of this section, an owner is required only to make a reasonable effort or inquiry to determine whether the prospective driver possesses a valid driver's license before allowing him or her to operate the owner's vehicle. An owner is not required to inquire of the [Department of Motor Vehicles (DMV)] whether the prospective driver possesses a valid driver's license." "A rental company is deemed to be in compliance with subdivision (a) if the company rents the vehicle in accordance with sections 14608 and 14609." (§ 14604, subd. (b).)

As previously discussed, section 14608 provides in relevant part that "a person shall not rent a motor vehicle to another unless" the renter is "licensed under this code" or under the law of another state or country of residence, and "[t]he person renting to another person has inspected the driver's license of the person to whom the vehicle is to be rented and compared either the signature thereon with that of the person to whom the vehicle is

---

3    Our alternative writ provided Grigoryan with the opportunity to file a return to the writ by August 1, 2022. She did not do so.

6

to be rented or the photograph thereon with the person to whom the vehicle is to be rented." (§ 14608, subds. (a)(1) & (a)(2).)

Section 14609 requires those renting a motor vehicle to another person to keep a record of the vehicle's registration number, the name and address of the renter, and the renter's driver's license number, expiration date, and issuing jurisdiction.[4]

**B.  ERAC-LA is Entitled to Summary Judgment**

**1.  ERAC-LA Complied with Section 14608**

ERAC-LA contends it is entitled to summary judgment as a matter of law because it complied with section 14608 by visually inspecting Murataliev's Kyrgyzstan driver's license to confirm it was facially valid. It argues it was not required under section 14608, subdivision (a)(1) to investigate whether Murataliev was still a resident of Kyrgyzstan, or whether he had permanently moved to the California address he provided in the rental paperwork. Grigoryan counters that the plain language of section 14608, subdivision (a)(1) (i.e., the reference to "residence") imposes a duty on the rental car agency to determine the prospective renter's residence in addition to the requirements set forth in subdivision (a)(2) to inspect the signature or photograph on the license. We agree with ERAC-LA. As discussed below, although no court has directly addressed this narrow issue, California courts have repeatedly declined to impose additional investigatory duties on rental car agencies absent a clear legislative declaration to the contrary.

---

4      ERAC-LA's compliance with section 14609 is not at issue here.

In *Philadelphia Indemnity Ins. Co. v. Montes-Harris* (2006) 40 Cal.4th 151, 155 (*Philadelphia*), our Supreme Court addressed whether "the duty of an insurer to investigate the insurability of an insured . . . appl[ies] to an automobile liability insurer that issues an excess liability insurance policy in the context of a rental car transaction[.]" The court concluded: "[W]here, as here, the sale of excess liability insurance in a rental car transaction occurs after the rental car customer presents a facially valid driver's license and after the license inspection and signature verification requirements of . . . section 14608, subdivision (b),[5] have been met, the excess insurer has no obligation to conduct a further inquiry regarding the validity of the customer's driver's license." (*Ibid*.) The court noted that at oral argument, it "asked the claimants what additional investigation should be required of excess insurers to ferret out rental car customers whose driver's licenses appear facially valid but in fact are suspended or revoked." (*Id*. at p. 162.) The claimants "suggested that rental car agents should affirmatively ask potential rental customers whether their driver's licenses have been suspended or revoked, and whether they have moved in the last year without notifying the DMV. They conceded, however, that such questioning might not be effective in those cases where, as here, a customer tenders a facially valid license that he or she knows or has reason to know has been suspended or revoked." (*Id*. at p. 163)

In further support of its holding, the *Philadelphia* court explained: "[T]he Legislature surely is aware that rental car companies, as owners of vehicles, typically supply the mandatory financial responsibility law coverage as part of the rental

5      Effective January 1, 2013, section 14608, subdivision (b) was redesignated subdivision (a)(2). (Stats. 2012, ch. 406, § 2.)

8

transaction. Yet, armed with that knowledge, the Legislature has determined that a rental car company 'is deemed to be in compliance' with the requirement that an owner make a reasonable effort or inquiry to determine whether a prospective driver possesses a valid driver's license if, before renting to a customer, it visually inspects the customer's driver's license and verifies the customer's signature in accordance with section 14608, subdivision (b), and also maintains records in accordance with section 14609. (§ 14604, subd. (b).) Because the Legislature has not seen fit to require DMV license checks or other specific investigatory measures on the part of an owner and typical provider of mandatory coverage in the rental car context, we shall decline to judicially impose such obligations on the offeror of optional excess coverage for purposes of preserving its rights to rescind an excess policy or invoke an exclusion clause based on a rental car customer's presentation of a facially valid but suspended driver's license. Moreover, while the Legislature might consider after this opinion whether further investigation should be required of a rental car company, and by extension an excess insurer, we remain mindful that the Legislature stands in the best position to identify and weigh the competing consumer, business, and public safety considerations that present themselves in the rental car context." (*Philadelphia, supra*, 40 Cal.4th at p. 163.)

Relying on *Philadelphia*, the court in *Flores v. Enterprise Rent-A-Car Co.* (2010) 188 Cal.App.4th 1055, 1059 (*Flores*) held rental car agencies have no duty to investigate the customer's license and driving records beyond the visual inspection required by section 14608. In *Flores*, the plaintiffs alleged the renter had prior DUI convictions in the last 48 months, and the rental

9

agency should have known this information and should have declined to rent the vehicle to him. (*Id*. at p. 1060.) The plaintiffs urged the Court of Appeal to find the decision in *Osborn v. Hertz Corp.* (1988) 205 Cal.App.3d 703 (*Osborn*) "no longer viable" because "electronic driver's license checks are now available to the rental car industry."[6] (*Flores, supra*, 188 Cal.App.4th at p. 1062.) The *Flores* court concluded, however, "that the availability of electronic driver's license checks does not render the rationale and holding of *Osborn* obsolete." (*Ibid*.) To the contrary, it found our Supreme Court's decision in *Philadelphia*, decided after *Osborn*, demonstrates "that rental car companies have no duty to conduct an electronic search of the driving records of their customers before entrusting a vehicle to them." (*Ibid*.) The *Flores* court took from the reasoning of *Philadelphia* "two salient points": "The first is that through section 14604, the Legislature has balanced the danger caused by those who drive with revoked or suspended licenses against 'the unique nature and operational constraints of the rental car business' (*Philadelphia, supra*, 40 Cal.4th at p. 162), and made the policy decision that the scope of a rental car agency's 'reasonable effort or inquiry' into the license status of its customers (§ 14604, subd. (a)) is limited to performing the tasks required by section 14608, subdivision [(a)(2)]: 'inspect[ing] the driver's license of the person to whom the vehicle is to be rented and compar[ing] the signature thereon

---

6      The court in *Osborn* held: "an agency has no duty to ask questions to investigate the driving record of the customer, and the agency may rely on presentation of a valid driver's license as sufficient evidence of fitness to drive, absent a legislative declaration to the contrary." (*Flores, supra*, 188 Cal.App.4th at p. 1062.)

with the signature of that person written in his or her presence.' The rental car agency is not required to make a DMV check of the customer's license status. (*Philadelphia, supra*, 40 Cal.4th at p. 163; § 14604, subd. (a).) Second, because of this specific policy decision, and because the Legislature is better suited to 'weigh the competing consumer, business, and public safety considerations that present themselves in the rental car context' (*Philadelphia, supra*, 40 Cal.4th at p. 163), any expansion of the duty of investigation imposed on rental car agencies is a matter for legislative, not judicial, action. Significantly, despite *Philadelphia*'s invitation to the Legislature to require rental car agencies to perform further investigation, the Legislature has not changed the relevant statutes. The absence of statutory changes suggests that the Legislature approves the Supreme Court's reasoning." (*Flores, supra*, 188 Cal.App.4th at p. 1069, fn. omitted.)

Consistent with *Philadelphia*, *Osborne*, and *Flores*, we conclude a rental car agency complies with section 14608 by visually examining the license and verifying either the signature on the license or the photograph. This conclusion does not, as the trial court held, "render the terms 'resident' and 'nonresident' [in section 14608, subdivision (a)(1)] superfluous." Rather, a rental car agency is entitled to rely on the prospective renter's presentation of a foreign driver's license as sufficient evidence of residence in the country from which the driver's license was issued.

The trial court's reliance on *Lindstrom v. Hertz Corp.* (2000) 81 Cal.App.4th 644 (*Lindstrom*) is misplaced. According to the trial court, the *Lindstrom* court "highlighted the duty of rental car agencies with regard to residency in stating under the

11

heading 'duty', that 'rental car agencies are required by state law to determine whether a potential customer possesses a valid driver's license from the jurisdiction where he resides.'" We disagree. In *Lindstrom*, a foreign citizen with a valid driver's license from his country rented a car from a rental agency in California. (*Id.* at p. 646.) Shortly after, he was involved in an accident in which the plaintiff was injured. (*Ibid.*) The plaintiff argued the rental agency had a duty to determine whether the renter was familiar with California rules of the road. (*Id.* at p. 649.) The *Lindstrom* court disagreed with the plaintiff, holding the rental car agency was not liable for negligent entrustment because its "duty of care is limited to determining whether the lessee has a valid driver's license as required" by section 14608; it "has no duty to determine the lessee's familiarity with California's traffic rules." (*Id.* at 647.) Thus, contrary to the trial court's reading of *Lindstrom*, the Court of Appeal neither held, nor had the opportunity to hold under the facts of the case, that a rental agency has a duty to further inquire into a prospective renter's residence after visually verifying the foreign driver's license.

Moreover, apparently acknowledging that nothing in section 14608 suggests the Legislature intended to impose investigatory duties on the rental car agency, the trial court held ERAC-LA did not have a duty to "investigate, per se" but to inquire how long Murataliev had been living at the local California address provided in the rental paperwork. Asking how long he had lived in California, however, would not have allowed ERAC-LA to determine whether Murataliev "resided" in California. Physical presence in the state, even where the person maintains a residence for an extended period of time, is not

12

sufficient to determine whether the person "resides" in California for purposes of issuing a driver's license. (See § 12505, subd. (a)(1) ["[R]esidency shall be determined as a person's state of domicile. 'State of domicile' means the state where a person has his or her true, fixed, and permanent home and principal residence and to which he or she has manifested the intention of returning whenever he or she is absent."].) Section 12505, subdivision (c) permits a foreign resident to drive in California on a foreign license for 10 days from the date of establishing residence in the state. To determine whether a person has established residence in the state, section 12505, subdivision (a)(1) includes a nonexhaustive list of evidence, which may suffice to establish a prime facie case (i.e., a rebuttable presumption) of residence, including: address where registered to vote; payment of resident tuition at a public institution of higher education; filing a homeowner's property tax exemption; or other acts, occurrences, or events that indicate presence in the state is more than temporary or transient. (§ 12505, subd. (a)(1).) Thus, even if ERAC-LA asked Murataliev how long he had been living in California, his response would not have revealed whether he had sufficiently manifested an intent to be domiciled in California as opposed to Kyrgyzstan (and thus whether he was required to have a facially valid *California* driver's license to legally drive or rent a vehicle in this state). We therefore decline to impose the proffered duty on a rental car agency, when it is neither expressly provided for in the statute, nor effective at ensuring statutory compliance.

Our conclusion that a rental car agency is entitled to rely on a foreign driver's license as sufficient evidence of residence in the country from which the driver's license was issued finds

further support in other provisions of the Vehicle Code. (See *Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1063 [statute must be interpreted in the context of the entire statutory scheme of which it is a part].) Specifically, section 12805, subdivision (a)(6) prohibits the DMV from issuing a driver's license to a person "[w]ho holds a valid driver's license issued by a foreign jurisdiction unless the license has been surrendered to the [DMV], or is lost or destroyed." That Murataliev still had a facially valid foreign license in his possession after also having apparently been issued a California driver's license[7] may indicate a failure on the part of the DMV, or dishonest conduct on the part of Murataliev. As discussed above, however, section 14604 requires only that a rental car agency "'make a reasonable effort' to determine whether the prospective driver possesses a valid driver's license"; "that reasonable effort does not include checking DMV records." (See *Flores, supra*, 188 Cal.App.4th at p. 1066.)

## 2. No Material Factual Disputes Exist

Having concluded ERAC-LA cannot, as a matter of law, be held liable for negligent entrustment based on its failure to inquire how long Murataliev lived in California at the time he presented ERAC-LA with his foreign driver's license, we now turn to Grigoryan's alternative argument that material factual disputes exist regarding whether ERAC-LA complied with 14608, subdivision (a)(2).

---

7      In support of her supplemental brief in opposition to ERAC-LA's motion for summary judgment, Grigoryan submitted additional evidence purportedly demonstrating that, at the time of the accident, Murataliev had a suspended California driver's license.

14

As previously noted, at the initial hearing on ERAC-LA's motion for summary judgment, the trial court concluded there was no dispute regarding whether ERAC-LA complied with section 14608, subdivision (a)(2): "There's no dispute here about [section] 14608 [subdivision] (a)(2), and there's no dispute as far as I can see that the defendants complied with it. [¶] . . . [ERAC-LA] confirmed that Murataliev[,] the person with the license[,] was Murataliev the person in the shop." On this point, we agree with the trial court.

In support of its motion for summary judgment, ERAC-LA presented the following evidence: (1) at the time of rental, Murataliev presented a driver's license issued by Kyrgyzstan; (2) ERAC-LA's rental records indicate Murataliev's license information was obtained at the time of the rental; and (3) records from Kyrgyzstan confirmed Murataliev's driver's license number and birthday, which matched ERAC-LA's rental records.[8] Based on this evidence, we conclude ERAC-LA met its prima facie burden of establishing its compliance with section 14608, subdivision (a)(2) by adequately inspecting Murataliev's foreign driver's license.

---

8      On behalf of ERAC-LA, a Kyrgyzstan attorney sent an "Attorney Information Request" to a Kyrgyzstan Office of Government Agency (referred to as "Unaa") to confirm Murataliev was issued a Kyrgyzstan driver's license on June 25, 2010. In response, ERAC-LA received a document titled "Response to Attorney Information Request from Ministry of Digital Development of the Kyrgyz Republic, 'Unaa Government Agency'," which was then translated by a certified Russian interpreter and translator. The response, signed by the Deputy Minister of the Unaa, confirmed Mr. Murataliev was issued a Kyrgyzstan driver's license on June 25, 2010.

The burden therefore shifted to Grigoryan to establish the existence of a triable issue of fact regarding ERAC-LA's inspection of Murataliev's driver's license. (See Code Civ. Proc., § 437c, subd. (p)(2).) In her preliminary opposition to ERAC-LA's petition, Grigoryan argues material factual disputes exist based on the following facts: (1) Kendra Carter, the ERAC-LA employee who handled the 2015 rental transaction with Murataliev, could not recall at her 2018 deposition whether she verified Murataliev's name and address information, and further testified she did not examine Murataliev's signature; (2) ERAC-LA's records indicate Murataliev's license was verified at two different times; and (3) Carter did not follow ERAC-LA's internal policies and procedures regarding foreign licenses. This evidence is insufficient to create a triable issue of material fact.

First, section 14608, subdivision (a)(2) requires that the rental car agency *either* verify the signature *or* the photograph on the license. At her deposition, Carter testified she always examines the photograph on the license to check that it matches the person presenting the license. Thus, whether she *also* verified the signature is immaterial.

Second, we reject Grigoryan's contention that because ERAC-LA's rental tickets indicate the rental was recorded on both July 20 and July 21, a material question of fact exists regarding whether Murataliev's license was verified. ERAC-LA explained "that information was recorded simultaneously into two different databases, which are located [in] different time zones." The basis for the discrepancy is immaterial, however. That ERAC-LA's electronic records list the same action occurring at two different times does not create a factual dispute regarding

16

whether Carter verified Murataliev's license by checking the photograph.

Third, Grigoryan argues ERAC-LA violated its own requirement that a prospective renter with a foreign license in a language other than English must also present an international driver's permit or suitable translation. But even assuming ERAC-LA had an internal policy requiring an examination of an international permit or a translation of the foreign license, that policy would impose requirements in addition to those in section 14608. "Violation of a self-imposed rule does not create actionable negligence unless plaintiff (1) suffers the type of harm sought to be prevented by the rule and (2) is a member of the class of people for whose protection the rule was promulgated." (*Software Design & Application LTD. v. Hoefer & Arnett, Inc.* (1996) 49 Cal.App.4th 472, 482.) Grigoryan neither argued, nor submitted evidence, indicating ERAC-LA's policy exists for her protection.

Finally, Grigoryan contends "[i]t is also disputed as to whether Ms. Carter in fact took steps to determine if Defendant Murataliev was fit to operate a vehicle." The complaint, however, does not allege Murataliev was impaired or otherwise unfit to drive the rental vehicle. (See *Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 74 ["It is well established that the pleadings determine the scope of relevant issues on a summary judgment motion."].) Whether Murataliev was fit to drive, therefore, is an immaterial fact.

Accordingly, we conclude Grigoryan failed to carry her burden to demonstrate a triable issue of material fact exists regarding ERAC-LA's compliance with section 14608, subdivision (a)(2).

17

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate its May 24, 2022 and July 29, 2022 orders denying ERAC-LA's motion for summary judgment and enter a new order granting the motion. ERAC-LA is awarded its costs in this proceeding.

## CERTIFIED FOR PUBLICATION


CURREY, J.

We concur:




WILLHITE, Acting P.J.




COLLINS, J.

18