Filed 1/30/26

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

| | |
|---|---|
| MAURICIO TAVARES, | C100576 |
| Plaintiff and Appellant, | (Super. Ct. No. CV-2021-0997) |
| v. | |
| ZIPCAR, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Yolo County, David W. Rosenberg, Judge. Affirmed.

Law Office of Stephanie J. Finelli, Stephanie J. Finelli; Demas Law Group, John N. Demas and Raymond E. Lewis, for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Dana Alden Fox, and Eliot A. Bennion; Clyde & Co US, Douglas J. Collodel, Danny L. Worker (admitted *pro hac vice*), and Lindsay J. Bowman (admitted *pro hac vice*) for Defendants and Respondents PV Holdings Corporation and Zipcar, Inc.

Plaintiff Mauricio Tavares sued Zipcar, Inc. and PV Holding Corporation (collectively, Zipcar), the owner and lessor of the vehicle in which Tavares was riding, after the intoxicated driver lost control of the rented vehicle and crashed into a tree. Tavares seeks damages from Zipcar for negligently entrusting the vehicle to an intoxicated driver, among other claims.

Tavares and Zipcar filed cross-motions for summary judgment/adjudication. The principal issue was whether Zipcar, as a remote rental car company, owed a duty to inquire whether the person renting the vehicle appeared impaired at the time of rental. The trial court granted summary judgment in favor of Zipcar, reasoning that Tavares could not show that Zipcar had a duty to inquire whether the person who rented the vehicle appeared impaired at the time of rental. Tavares contends this was reversible error. We disagree and therefore affirm the grant of summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant Zipcar, Inc. is a membership-based rental service that provides its members with remote access to vehicles by the hour. Prospective members must apply and be approved for membership. After Zipcar verifies the applicant's driver's license, it approves the membership and issues a membership card. Members are then able to reserve a vehicle of their choice using the Zipcar "app" or the company's website. The member may access the reserved vehicle during the reservation period by waving their membership card over a card reader attached to the vehicle. Defendant PV Holding Corporation, an affiliated entity of Zipcar, Inc., is the nominee title holder and registered owner of the vehicles utilized by Zipcar.

At the time of the incident, Mohammed Ismail was a student attending the University of California, Davis, and a member of Zipcar. Zipcar's membership agreement with Ismail stated that Zipcar had the right to terminate his membership for misconduct, including driving while impaired.

2

On the night of March 31, 2020, Ismail hosted a party with Tavares and other friends. During the party, which lasted from approximately 9:30 p.m. to 11:00 p.m., Ismail consumed alcohol.

At some point that evening, Ismail used the app on his cell phone to reserve a Zipcar vehicle for one hour, beginning at midnight. Zipcar confirmed Ismail's reservation through the app. That was the only communication between Ismail and Zipcar that night. Ismail had no in-person or face-to-face contact with anyone from Zipcar at the time he reserved the vehicle. Further, the Zipcar app asked Ismail no questions other than the date, time, and location of the vehicle that he wished to rent.

At the designated location, Ismail gained access to the Zipcar vehicle by tapping his membership card on a card reader. Ismail then got behind the wheel of the vehicle and drove away, with Tavares and another friend as passengers. Less than 10 minutes later, Ismail crashed the vehicle into a tree, leaving Tavares with paraplegic injuries.

The officer responding to the scene observed that Ismail exhibited signs of intoxication, including red, watery eyes and an odor of alcohol. A preliminary alcohol screening test was administered, which measured Ismail's blood alcohol level at .095 and .099 percent, approximately an hour after the crash. Ismail was ultimately charged with driving under the influence (DUI) of alcohol. He pled no contest and was convicted of a felony violation of Vehicle Code section 23153, subdivision (a) (driving under the influence of alcohol causing injury).

Before the incident at issue here, Zipcar had no knowledge that Ismail ever operated a vehicle while intoxicated or impaired.

When Ismail took possession of the Zipcar on the night of the incident, the vehicle was not equipped with a breathalyzer or any other type of alcohol sensing device to assess potential impairment of the driver. Ismail testified that if Zipcar had a method of checking whether he appeared impaired at the time of the rental, he would not have reserved the Zipcar that night.

In July 2021, Tavares filed a complaint for damages against Zipcar. The operative complaint alleges that Zipcar negligently entrusted its vehicle to Ismail, whom Zipcar knew or should have known was intoxicated and unfit to operate the vehicle. The complaint further alleges that Zipcar negligently maintained the vehicle by modifying it to allow remote access without including any method or device to ensure it would not be driven by an intoxicated or impaired person. Tavares claims that as a proximate result of Zipcar's purported negligence, he was injured and suffered damages. The complaint also seeks to hold Zipcar liable as the vehicle owner for the permissive user's negligence. Zipcar answered, denying all claims against it.

In 2023, Tavares filed a motion seeking summary adjudication of two issues: (1) that Zipcar had a general duty of care to protect him from harm, and (2) that Zipcar had a specific duty "to inquire whether [Ismail] appeared impaired at the time of the rental."

Shortly thereafter, Zipcar filed its own motion for summary judgment, arguing that Tavares's causes of action for negligent entrustment and negligent maintenance failed because remote rental car companies have no independent duty to assess renters for potential impairment at the time of rental. In support, Zipcar relied primarily on Civil Code section 1939.37, which exempts remote rental car companies from the requirement of inspecting a driver's license at the time of rental. Zipcar argued that imposing a duty to inquire about a renter's fitness to drive at the time of the rental would frustrate the purpose of that law. Zipcar emphasized that California courts have repeatedly declined to impose additional investigatory duties on rental car companies beyond those prescribed by statute.

Zipcar also argued that the negligent maintenance claim failed because remote rental car companies have no duty to equip their vehicles with a device to detect a driver's potential impairment. Zipcar argued that imposing such a duty would be unduly

4

burdensome and inconsistent with laws governing the use of electronic surveillance technology in vehicles.

Finally, to the extent Tavares was seeking to hold Zipcar vicariously liable as the owner of the vehicle, Zipcar argued it was immune from liability under the federal Graves Amendment (49 U.S.C. § 30106) (the Graves Amendment).

A hearing on the competing motions was held in November 2023. After the hearing, the trial court denied Tavares's motion for summary adjudication and granted Zipcar's motion for summary judgment. Regarding the negligent entrustment claim, the court ruled that Tavares could not establish that Zipcar had a duty to inquire whether Ismail appeared impaired at the time of the rental. The court stated, "While plaintiff urges this Court to find that defendants had a duty to assess defendant Ismail's fitness to drive at the time of rental, the cases that plaintiff relies upon discuss a car rental company's duty in the context of Vehicle Code section 14608." The court continued, "Defendants have established that Vehicle Code section 14608 does not apply here and therefore, these cases are distinguishable."

Regarding the negligent maintenance claim, the trial court ruled that Tavares could not establish Zipcar had any duty to equip its cars with an " 'alternative means or method of screening or inquiring into the impairment of its members before they get behind the wheel of a Zipcar.' "

As to any claim of vicarious liability, the trial court found that the Graves Amendment preempted claims based solely on Zipcar's ownership of the vehicle.

Judgment was entered in favor of Zipcar on January 5, 2024.[1] Tavares filed a timely notice of appeal on February 21, 2024.

---

[1] The trial court judge has since retired from the bench.

## DISCUSSION

### I

### *Standard of Review*

A motion for summary judgment shall be granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "Summary adjudication works the same way, except it acts on specific causes of action or affirmative defenses, rather than on the entire complaint. [Citation.] A summary adjudication is properly granted only if a motion therefor completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty." (*Hartline v. Kaiser Foundation Hospitals* (2005) 132 Cal.App.4th 458, 464.)

The moving party, whether plaintiff or defendant, initially bears the burden of making a "prima facie showing of the nonexistence of any genuine issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 845.) "A prima facie showing is one that is sufficient to support the position of the party in question." (*Id.* at p. 851.) A plaintiff moving for summary judgment/adjudication meets its burden by "prov[ing] each element of the cause of action entitling the party to judgment on that cause of action." (Code Civ. Proc., § 437c, subd. (p)(1).) A defendant moving for summary judgment can meet its burden of showing that a cause of action has no merit by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to the cause of action. (*Id.,* subd. (p)(2).) Once a moving party has met its burden, the burden shifts to the opposing party to show the existence of a triable issue of material fact. (*Id.*, subd. (p).)

We review rulings on motions for summary judgment and summary adjudication de novo and decide independently whether the facts not subject to dispute warrant judgment for the moving party as a matter of law. (*DiCarlo v. County of Monterey* (2017) 12 Cal.App.5th 468, 489; *Hartline v. Kaiser Foundation Hospitals, supra,*

132 Cal.App.4th at p. 464.)  In so doing, we liberally construe the evidence in support of the party opposing the motion and resolve any doubts as to the propriety of granting the motion in favor of that party.  (*Quidel Corp. v. Superior Court* (2020) 57 Cal.App.5th 155, 164.)

II

*Duty of Care*

We first consider Tavares's claim that the trial court erroneously granted summary judgment on his claims for negligent entrustment and negligent maintenance.

A.    *Legal Principles*

The elements of a negligence cause of action are the existence of a legal duty of care, breach of that duty, and proximate cause resulting in injury.  (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 213 (*Brown*).)  Here, the competing motions for summary judgment/adjudication addressed only the element of duty.

"Duty is not universal; not every defendant owes every plaintiff a duty of care.  A duty exists only if ' "the plaintiff's interests are entitled to legal protection against the defendant's conduct." ' [Citation.]  Whether a duty exists is a question of law to be resolved by the court."  (*Brown, supra*, 11 Cal.5th at p. 213.)

The "general rule" of duty is set forth in Civil Code section 1714.  It states in relevant part:  "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself."  (Civ. Code, § 1714, subd. (a).)  This statute establishes the default rule that all persons have a duty to take reasonable care in their activities to avoid creating an unreasonable risk of injury to others.  (*Brown, supra*, 11 Cal.5th at pp. 209, 214; see *Lugtu v. California Highway Patrol* (2001) 26 Cal.4th 703, 716 [general duty to exercise due care includes the duty not

7

to place another person in a situation in which that person is exposed to an unreasonable risk of harm through the reasonably foreseeable conduct of a third person].)

Civil Code section 1714 establishes a broad rule, but it is not without limits. (*Brown, supra*, 11 Cal.5th at p. 214.) It "imposes a general duty of care on a defendant only when it is the defendant who has ' "created a risk" ' of harm to the plaintiff." (*Ibid*.) "The law does not impose the same duty on a defendant who did not contribute to the risk that the plaintiff would suffer the harm alleged." (*Ibid*.) Generally, a defendant cannot be held liable in negligence for harms it did not cause unless there are special circumstances, such as a special relationship, that give the defendant an affirmative duty to protect the victim from another's harm. (*Id*. at pp. 214, 220.)

Further, even where there is a legal basis for imposing the default duty of care—as in cases where the defendant has increased the risk of harm to the plaintiff—courts have the power and obligation to examine whether considerations of public policy warrant limiting that duty. (*A.L. v. Harbor Developmental Disabilities Foundation* (2024) 102 Cal.App.5th 477, 488; *Brown, supra*, 11 Cal.5th at pp. 209, 217-219.) In *Rowland v. Christian* (1968) 69 Cal.2d 108, our Supreme Court summarized the policy considerations that must be balanced in determining whether to limit or excuse a defendant's duty of care. (*Id*. at pp. 112-113.) They are: " 'the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' " (*Kuciemba v. Victory Woodworks, Inc.* (2023) 14 Cal.5th 993, 1021, quoting *Rowland, supra*, at p. 113.)

B.    *Analysis*

Tavares's complaint alleges causes of action against Zipcar for negligent entrustment and negligent maintenance of the rental vehicle.  Tavares avers that Zipcar negligently entrusted the vehicle to Ismail when it knew or should have known that Ismail was impaired and unfit to drive.  Tavares further alleges that Zipcar negligently maintained the vehicle by modifying it to permit remote access without including any method or device to screen for potential impairment.

1.    *Negligent Entrustment*

" 'It is generally recognized that one who places or entrusts his [or her] motor vehicle in the hands of one whom he [or she] knows, or from the circumstances is charged with knowing, is incompetent or unfit to drive, may be held liable for an injury inflicted by the use made thereof by that driver, provided the plaintiff can establish that the injury complained of was proximately caused by the driver's disqualification, incompetency, inexperience or recklessness.' " (*Osborn v. Hertz Corp.* (1988) 205 Cal.App.3d 703, 708 (*Osborn*).)  Liability does not depend on a special relationship but instead arises from the act of entrustment to one whose incompetency, inexperience, or recklessness is known or should have been known to the owner.  (*Ibid*.)  Under a negligent entrustment theory, " 'liability is imposed on [the] vehicle owner or permitter because of his [or her] own independent negligence and not the negligence of the driver.' " (*Id*. at p. 709.)

A rental car company may be held liable for negligently entrusting a vehicle to a customer.  (*Osborn, supra*, 205 Cal.App.3d at p. 709.)  CACI No. 724 lists the elements of the tort.  (See *McKenna v. Beesley* (2021) 67 Cal.App.5th 552, 565-566 (*McKenna*).)  It states that to hold a defendant liable for negligent entrustment, the plaintiff must prove that:  (1) the driver was negligent in operating the vehicle; (2) the defendant was an owner of the vehicle operated by the driver; (3) the defendant knew, or should have known, that the driver was incompetent or unfit to drive the vehicle; (4) the defendant

9

permitted the driver to use the vehicle; and (5) the driver's incompetence or unfitness to drive was a substantial factor in causing harm to the plaintiff.  (CACI No. 724; *Jeld-Wen, Inc. v. Superior Court* (2005) 131 Cal.App.4th 853, 863-864.)

Here, only the third element was contested.  Zipcar argued, and the trial court found, that the undisputed material facts established that Zipcar had no actual or constructive knowledge that Ismail was intoxicated and unfit to drive.

On appeal, Tavares does not claim that Zipcar had actual knowledge that Ismail was intoxicated at the time of the rental.  Citing authority establishing that traditional rental car companies have a duty not to rent to someone who appears impaired, Tavares argues that Zipcar's failure to so inquire can be used to prove constructive knowledge that Ismail was unfit to drive.  (See *Ralph Andrews Productions, Inc. v. Paramount Pictures Corp.* (1990) 222 Cal.App.3d 676, 682 [means of knowledge are equivalent to knowledge if there was a duty to inquire]; Civ. Code, § 19.)

However, the cases on which Tavares relies emphasize the importance of statutory law in determining the scope of a rental car company's duty to investigate the fitness of its customers.  (See *Flores v. Enterprise Rent-A-Car Co*. (2010) 188 Cal.App.4th 1055, 1069-1070 (*Flores*); *McKenna, supra*, 67 Cal.App.5th at pp. 569-570; *Lindstrom v. Hertz Corp.* (2000) 81 Cal.App.4th 644, 649-651 (*Lindstrom*).)  The relevant statute here is Civil Code section 1939.37, which, as discussed in greater detail below, exempted remote rental car companies from the driver's license inspection requirements of Vehicle Code section 14608.  As a result of this change, remote rental car companies are now expressly authorized to rent vehicles to customers without requiring an in-person interaction with an employee.  Accordingly, we find the assertion that remote rental car companies have an affirmative duty to assess whether a customer "appears" impaired at the time of the rental to be inconsistent with the relevant statutes, and the cases imposing such a duty to be clearly distinguishable.  We explain below, beginning with *Flores, supra*, 188 Cal.App.4th 1055.

In *Flores*, the appellate court considered whether, in light of the accessibility of electronic driving records, rental car companies have a duty to search the driving records of their customers before entrusting a vehicle to them. (*Flores, supra*, 188 Cal.App.4th at p. 1059.) The plaintiffs, parents of a boy killed after being struck by a rented car, sued the rental car company, alleging that the driver had prior convictions for DUI and that the company should have known this information and refused to rent him a vehicle. (*Id*. at p. 1060.) The trial court found that defendants were entitled to judgment as a matter of law because the company had no duty to investigate the customer's driving history. (*Id*. at p. 1062.)

The appellate court affirmed. (*Flores, supra*, 188 Cal.App.4th at p. 1073.) It held that Vehicle Code sections 14604 and 14608 "circumscribed the duty of a rental car agency to investigate the license status (and, by implication, the driving history) of its customers." (*Flores,* at p. 1070.) Taken together, those statutes prohibit a rental car agency from renting a car to an unlicensed driver and require the agency to " 'make a reasonable effort' " to determine whether the prospective driver possesses a valid driver's license. (*Id*. at pp. 1066, 1070.) However, the court held, "[t]hat duty does not extend to making an electronic check of customers' driving records." (*Id*. at p. 1070.) Thus, as a matter of law, "a rental car agency is not liable for negligent entrustment where the agency has fully complied with the requirements of [Vehicle Code] sections 14604 and 14608 and the customer does not appear impaired or otherwise unfit to drive at the time of rental." (*Id*. at p. 1070; accord, *Osborn, supra*, 205 Cal.App.3d at pp. 709-712 [concluding that a rental car company could be held liable for negligently entrusting a vehicle to an unlicensed driver in disregard of Veh. Code, § 14608, but could not be held liable for failing to interrogate the customer about his driving record or intentions where he gave no indication that he was intoxicated or otherwise unfit to drive].)

In reaching this conclusion, the *Flores* court relied upon our Supreme Court's decision in *Philadelphia Indemnity Ins. Co. v. Montes-Harris* (2006) 40 Cal.4th 151. In

*Philadelphia Indemnity*, a rental car customer obtained excess liability insurance after presenting a facially valid driver's license. (*Id*. at pp. 155-156.) In fact, the customer's license had been suspended two months earlier. (*Id*. at p. 156.) Later, when the customer was sued for injuries arising out of an accident, the insurer sought to rescind the insurance policy based on the customer's misrepresentation. (*Ibid*.) The injured parties then argued that the insurer forfeited any right to cancel the policy by failing to investigate the customer's license status before issuing the policy. (*Id*. at pp. 156, 164.) Our Supreme Court disagreed, holding that because the insurer complied with its duty under Vehicle Code section 14608 by inspecting the license and verifying the signature, the insurer had no obligation to conduct a further inquiry regarding the validity of the license prior to its discovery of the misrepresentation. (*Philadelphia Indemnity Ins. Co., supra*, at p. 164.)

The *Flores* court derived "two salient points" from *Philadelphia Indemnity*. (*Flores, supra*, 188 Cal.App.4th at p. 1069.) The first is that "through [Vehicle Code] section 14604, the Legislature has balanced the danger caused by those who drive with revoked or suspended licenses against 'the unique nature and operational constraints of the rental car business' [citation], and made the policy decision that the scope of a rental car agency's 'reasonable effort or inquiry' into the license status of its customers [citation] is limited to performing the tasks required by [Vehicle Code] section 14608, subdivision (b): 'inspect[ing] the driver's license of the person to whom the vehicle is to be rented and compar[ing] the signature thereon with the signature of that person written in his or her presence.' " (*Ibid*.) The second is that "because of this specific policy decision, and because the Legislature is better suited to 'weigh the competing consumer, business, and public safety considerations that present themselves in the rental car context' [citation], any expansion of the duty of investigation imposed on rental car agencies is a matter for legislative, not judicial, action." (*Ibid*.)

*McKenna, supra,* 67 Cal.App.5th 552, further considered the effect of the Vehicle Code on an owner's liability for negligent entrustment of a motor vehicle. (*McKenna,* at p. 572.) In *McKenna*, the owner of a vehicle allowed an unlicensed driver to use the vehicle without checking whether the driver had a valid license. (*Id*. at pp. 559-560.) The driver caused a collision, injuring the plaintiff. (*Ibid*.) The plaintiff sued the owner for negligent entrustment and other claims. (*Id*. at p. 559.) The trial court granted the defendants' motion for summary judgment/adjudication on the ground they had no notice of the driver's incompetence and therefore lacked any duty to investigate the driver's fitness. (*Id*. at pp. 562-563.)

The court of appeal reversed. (*McKenna, supra,* 67 Cal.App.5th at p. 585.) It held that "[i]n determining the scope of common law tort duties pertaining to those who allow unlicensed or unfit drivers to drive a vehicle, California courts have long looked to statutory law." (*Id*. at p. 567.) Because the Vehicle Code establishes an "affirmative duty to inquire regarding a prospective driver's license status," (*McKenna,* at p. 574; italics omitted) the court held that if the owner failed to comply with that statutory duty, the jury reasonably could find that the owner had constructive knowledge the driver was incompetent or unfit to drive. (*Id*. at pp. 575-577, 581.)

By way of contrast, the *McKenna* court cited *Dodge Center v. Superior Court* (1988) 199 Cal.App.3d 332, superseded in part by statute. In *Dodge Center*, the appellate court concluded that a motor vehicle *seller* could not be held liable for negligent entrustment to an unlicensed driver because the statutory law imposed no legal duty upon the seller of a vehicle to investigate the prospective purchaser's license status. (*McKenna, supra*, 67 Cal.App.5th at pp. 570-572; see *Dodge Center, supra*, at pp. 338-339, 342.) The *McKenna* court observed that, ordinarily, the owner of an automobile is under no duty to persons who may be injured by its use to keep it out of the hands of a third person in the absence of facts putting the owner on notice that the third person is incompetent to handle it. (*McKenna*, at p. 569; accord, *Grafton v. Mollica* (1965)

13

231 Cal.App.2d 860, 863; see *Jacoves v. United Merchandising Corp.* (1992) 9 Cal.App.4th 88, 118-119 [complaint insufficient to state cause of action against sporting goods store for negligent entrustment of rifle to psychiatric patient who committed suicide, where store did not know or have reason to know of patient's intent].)

In *Lindstrom, supra*, 81 Cal.App.4th 644, another case relied upon by Tavares, a citizen with a valid foreign driver's license rented a car from a California rental agency. (*Id*. at p. 646.) Shortly thereafter, he was involved in an accident in which the plaintiff was injured. (*Ibid*.) The plaintiff argued the rental agency breached a duty of care by entrusting the vehicle to the renter without determining whether he was familiar with California's traffic rules. (*Ibid*.) The appellate court affirmed a grant of summary adjudication for the defendant, concluding that the rental car company fulfilled its legal duty by determining that the renter had a valid driver's license in accordance with Vehicle Code section 14608. (*Lindstrom, supra*, at p. 647.) The company had no further duty to determine the renter's fitness in the absence of facts giving notice that the driver was unfit to drive. (*Id*. at p. 650; accord, *Enterprise Rent-A-Car of Los Angeles v. Superior Court* (2022) 84 Cal.App.5th 1, 98-12 [rental car companies have no duty to investigate a facially valid foreign license].) The court noted that "[i]t is for the Legislature, not the courts, to determine whether tort liability should be based on an individual's membership in a class." (*Lindstrom,* at p. 650.)

Tavares relies on these cases for the principle that rental car companies have a legal duty not to rent a car to someone who "appears" intoxicated or impaired at the time of the rental. From this, Tavares infers that all rental car companies—including remote rental car companies—have a duty to investigate whether a prospective renter appears impaired at the time of rental. This argument sweeps too broadly.

As discussed, liability for negligent entrustment of a motor vehicle requires proof that the defendant entrusted the motor vehicle to a person who the defendant knew, or from the circumstances reasonably should have known, was unfit to drive. As Tavares

14

points out, because every rental car historically was rented "at the counter," the process afforded car rental employees an "opportunity to observe" whether a prospective driver appeared impaired at the time of the rental. Thus, this is the context in which courts have found that rental car companies can be held liable for negligently entrusting a vehicle to a customer who "appears" to be intoxicated or impaired at the time of rental. (See, e.g., *Osborn, supra*, 205 Cal.App.3d at p. 709.) In other words, traditional rental car companies can be charged with constructive knowledge that the customer was intoxicated or impaired if the customer displayed obvious signs of intoxication or impairment at the time of the rental.

Notably, however, these cases did *not* hold that the mere act of renting a vehicle gives rise to a duty to investigate whether a customer *appears* intoxicated or impaired at the time of the rental. Instead, they were based on the investigatory duties imposed on rental car companies under the Vehicle Code, and the courts were careful to note that "any expansion of the duty of investigation imposed on rental car agencies is a matter for legislative, not judicial, action." (*Flores, supra*, 188 Cal.App.4th at p. 1069-1070; *Enterprise Rent-A-Car of Los Angeles v. Superior Court, supra*, 84 Cal.App.5th at p. 8 ["California courts have repeatedly declined to impose additional investigatory duties on rental car agencies absent a clear legislative declaration to the contrary"]; see *McKenna, supra*, 67 Cal.App.5th at p. 567 ["In determining the scope of common law tort duties pertaining to those who allow unlicensed or unfit drivers to drive a vehicle, California courts have long looked to statutory law"]; see also *Dodge Center v. Superior Court, supra*, 199 Cal.App.3d at pp. 338-339 [no statute imposes on a retailer the duty to inquire as to the purchaser's license status]; *Osborn, supra*, 205 Cal.App.3d at p. 710 [obvious that an ordinarily prudent rental car company is not obligated to ask a customer whether he or she intends to drive under the influence].) This is because "the Legislature is better suited to 'weigh the competing consumer, business, and public safety considerations that

15

present themselves in the rental car context.' " (*Flores*, at p. 1069, citing *Philadelphia Indemnity, supra*, 40 Cal.4th at p. 163.)

As discussed, the Vehicle Code generally prohibits renting a motor vehicle to another unless (1) the person to whom the vehicle is rented is licensed and (2) the person renting the vehicle has inspected the driver's license of the person to whom the vehicle is to be rented and compared either the signature or photograph thereon with the person to whom the vehicle is rented. (Veh. Code, §§ 14604, 14608.) However, in 2016, the Legislature enacted Civil Code section 1939.37, which exempts remote rental car agencies from the inspection requirements of Vehicle Code section 14608. Civil Code section 1939.37, provides that "[a] rental company is not subject to the requirements of Section 14608 of the Vehicle Code if the rental is subject to the terms of a membership agreement that allows the renter to gain physical access to a vehicle without a key through use of a code, key card, or by other means that allow the vehicle to be accessed at a remote location, or at a business location of the rental company outside of that location's regular hours of operation." (Civ. Code, § 1939.37.)

The legislative history of Civil Code section 1939.37 shows that its purpose was to " 'update the vehicle code to match existing and more efficient ways to process car rentals to customers and . . . update California law with evolving rental car transactions structures.' " (Sen. Judiciary Com., Assem. Bill No. 2189 (2011-2012 Reg. Sess.) as amended June 25, 2012, p. 3; see Sen. Transportation & Housing Com., Analysis of Assem. Bill No. 2189 (2011-2012 Reg. Sess.) as amended Aug. 24, 2012, p. 2.) The legislative history specifically mentions Zipcar as an example of the type of "car sharing model" of business that the legislation was intended to authorize. (Sen. Judiciary Com., Assem. Bill No. 2189, *supra*, p. 2; see *id*. at pp. 3-5.) Thus, through enactment of Civil Code section 1939.37, the Legislature expressly authorized remote rental car companies to rent vehicles to customers without the requirement of an in-person interaction with an employee. It necessarily follows, in our view, that by enacting Civil Code section

16

1939.37, the Legislature also intended to exempt remote rental car companies from any duty to assess whether the renter "appears" impaired at the time of the rental. If that is not what was intended, it is up to the Legislature to clarify the statute. Accordingly, we find the cases relied upon by Tavares to be distinguishable and conclude that the trial court correctly held that Zipcar has no such duty.

Given our conclusion that Civil Code section 1939.37 limits the scope of the duty of inquiry for remote rental car agencies,[2] we find it unnecessary to consider whether the policy considerations articulated in *Rowland v. Christian, supra*, 69 Cal.2d 108, also support an exception to the general duty of care. (See *Hassaine v. Club Demonstration Services, Inc.* (2022) 77 Cal.App.5th 843, 851.)

2.        *Negligent Maintenance*

In addition to its negligent entrustment claim, Tavares's complaint alleges that Zipcar negligently maintained the vehicle by modifying it to permit remote access without including any method or device to screen for driver impairment. To the extent this claim is based on the lack of a method of inquiring into whether a renter "appears" impaired, it is derivative of the negligent entrustment claim and fails for the same reason.

To the extent the claim is based on Zipcar's alleged failure to equip its vehicles with technology to detect whether a driver is intoxicated, we agree with Zipcar that it had no such duty. As Zipcar points out, when enacting the "rental passenger vehicle transaction" guidelines (Civ. Code, § 1939.01 et seq.), the Legislature carefully defined the circumstances in which electronic surveillance technology may be employed in rental vehicles, none of which include monitoring for driver intoxication or impairment. (Civ.

---

**2**        We disagree with Tavares's assertion that this section does not apply because Zipcar does not meet the definitional requirements of a "membership program" set forth in Civil Code section 1939.01, subdivision (k)(5). Civil Code section 1939.37 does not require a "membership program;" it only requires the rental be subject to a "membership agreement." (Civ. Code, § 1939.37.)

17

Code, § 1939.23.)  "[A]ny expansion of the duty of investigation imposed on rental car agencies is a matter for legislative, not judicial, action."  (*Flores, supra*, 188 Cal.App.4th at p. 1069.)

III

*Vicarious Liability*

Beyond the negligent entrustment and negligent maintenance claims, the operative complaint also (arguably) alleges that Zipcar, as the owner of the vehicle, is vicariously liable to Tavares under California's "permissive use" statute (Veh. Code, § 17150).  That statute provides:  "Every owner of a motor vehicle is liable and responsible for death or injury to person or property resulting from a negligent or wrongful act or omission in the operation of the motor vehicle, in the business of the owner or otherwise, by any person using or operating the same with the permission, express or implied, of the owner."  (Veh. Code, § 17150; CACI No. 720.)  The liability of an owner under Vehicle Code section 17150 is statutory in nature.  (*Galvis v. Petito* (1993) 13 Cal.App.4th 551, 564.)  "Liability arises solely from the owner's *status* as owner of the vehicle, not from any independent fault or wrongdoing on the owner's part."  (*Id*. at p. 555.)

Zipcar argues that liability predicated solely on its ownership of the vehicle is precluded by the Graves Amendment, which shields owners engaged in the trade or business of renting or leasing motor vehicles from vicarious liability for the negligence of their drivers.  (*Vargas v. FMI, Inc.* (2015) 233 Cal.App.4th 638, 642; 49 U.S.C. § 30106(a).)  We agree.

The Graves Amendment preempts state laws, such as Vehicle Code section 17150, which impose vicarious liability on the owners of leased or rented vehicles based solely on their ownership.  (*Garcia v. Vanguard Car Rental USA, Inc.* (11th Cir. 2008) 540 F.3d 1242, 1246; *Carton v. GMAC* (8th Cir. 2010) 611 F.3d 451, 456-457.)  Although the Graves Amendment contains an exception for "financial responsibility" laws (49 U.S.C. § 30106(b)(1)), Vehicle Code section 17150 is not a financial responsibility law.

18

(*Goodson v. Perfect Fit Enterprises Inc.* (1998) 67 Cal.App.4th 508, 514; *Garcia, supra*, at pp. 1247-1249; *Subrogation Div. Inc. v. Brown* (D.S.D. 2020) 446 F. Supp. 3d 542, 551-552; *Vargas v. Enterprise Leasing Co.* (Fla. 2011) 60 So.3d 1037, 1042-1043; Veh. Code, § 16020.)  Rather, it is precisely the type of law the Graves Amendment was designed to preempt.

For all the foregoing reasons, we conclude that the trial court correctly determined that Zipcar owed no duty with respect to Tavares's claims for negligent entrustment and negligent maintenance, and that any vicarious liability claim based solely on Zipcar's ownership of the vehicle is preempted by the Graves Amendment.  Thus, we affirm the trial court's judgment.

DISPOSITION

The judgment entered in favor of defendants is affirmed.  Defendants shall receive their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


\s\                            ,
Krause, J.


We concur:


\s\                            ,
Hull, Acting P. J.


\s\                            ,
Boulware Eurie, J.