Filed 5/15/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| EDWIN SARGENTI, Plaintiff and Appellant, v. CITY OF LONG BEACH, Defendant and Respondent. | B340275 (Los Angeles County Super. Ct. No. 21STCV04367) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lee S. Arian, Judge. Affirmed.

Kramer Trial Lawyers, Daniel Kramer, Teresa A. Johnson; Belal Hamideh Law, Belal Hamideh; Esner, Chang, Boyer & Murphy and Stuart B. Esner for Plaintiff and Appellant.

Olivarez Madruga Law Organization, Thomas Matthew Madruga, Tania Ochoa; Morrison & Foerster, Aileen McGrath and Zach ZhenHe Tan for Defendant and Respondent.

# INTRODUCTION

While riding a rented electric scooter on a sidewalk in the City of Long Beach, Edwin Sargenti hit a patch of asphalt, fell, and suffered injuries. He sued the City for negligence, alleging that the City had notice the asphalt patch was dangerous and that the City negligently created or maintained the condition.

The City moved for summary judgment on several grounds, and the trial court granted the motion on one of them: Sargenti had signed a document that waived and released his claims against the City. After giving the parties the opportunity to file supplemental briefs under Code of Civil Procedure section 437c, subdivision (m)(2),[1] we affirm the trial court's order on a different ground: The City did not have actual or constructive notice of the allegedly dangerous condition. In doing so, we hold serving amended interrogatory responses does not, without more, automatically create a triable issue of material fact. We also hold the Supreme Court's decision in *Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931 (*Sweetwater*) does not authorize the court to consider inadmissible evidence submitted in opposition to a motion for summary judgment where the proponent claims it can cure the evidentiary defect at trial. Therefore, we affirm.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *Sargenti Falls While Riding an Electric Scooter and Sues the City*

One evening in January 2020 Sargenti was riding an electric scooter he rented from a company that facilitates dockless bicycle and scooter rentals in metropolitan areas through a web-based application.  He was with two friends.  Sargenti and one of his companions were riding on the sidewalk, except when they crossed a street; the other was "weaving in and out and jumping curbs."  While attempting to move from the sidewalk to a bicycle lane in the street, Sargenti, who had consumed one and a half beers earlier that day, hit "a blunt flat edge" of an asphalt patch "located over a portion of the driveway section of the sidewalk," fell from the scooter, and suffered injuries.

Sargenti had registered for the web-based electric scooter rental application in March 2019 by clicking on a user agreement (though he later did not remember reading or accepting it).  The user agreement contained various exculpatory provisions, including that the user of the electric scooter assumed the risk of using the scooter, released the rental company and "other released persons" from claims arising out of the use of the scooter, and waived any and all claims against, indemnified, and agreed to hold harmless the "released persons."  The user agreement defined "released persons" to include municipalities and public entities like the City.

Sargenti filed this negligence action against the City and the owner of the property adjacent to the sidewalk.  He alleged the defendants created or negligently maintained a defective condition, namely, "a sidewalk uplift," that caused him to fall off

3

his electric scooter.  He alleged that "it was reasonably foreseeable that civilians could trip/fall on this defect on the public property" and that the defendants "failed to take any actions to reduce or eliminate the risk of injury and the unreasonable risk of harm presented by the defect on the public property."

B.    *The City Moves for Summary Judgment*

The City moved for summary judgment on three grounds. First, the City argued Sargenti's use of the electric scooter precluded him from establishing there was a dangerous condition.  The City contended Sargenti did not use the scooter in a reasonably foreseeable manner because he "violated state and local law in riding his e-scooter on the sidewalk" and "consumed alcohol prior to operating the e-scooter."  Second, the City argued it did not have actual or constructive notice of a dangerous condition at the location of the accident.  The City contended there was "no record of any complaints, calls for service, repairs or any work completed by the City"; no evidence "a City employee knew of the asphalt patch"; and "zero evidence . . . the asphalt patch existed for any length of time, let alone a sufficient amount of time," before Sargenti's accident in January 2020.  And third, the City argued Sargenti "released and waived all claims against the City" by breaching his user agreement with the electric scooter rental company.  The City contended that it was a third party beneficiary of the user agreement between Sargenti and the electric scooter rental company, that Sargenti violated that agreement by riding on the sidewalk and consuming alcohol before using the scooter, and that the exculpatory provisions of the agreement (the release, limitation of liability,

4

indemnification, assumption of liability, and the like) did not violate public policy.

In opposition to the motion for summary judgment, Sargenti argued that he was operating the electric scooter on the driveway, not the sidewalk; that "it is normal to see users ride rentable electric scooters on the sidewalk"; and that, though he drank beer several hours before the accident, there was no evidence he was intoxicated. On the issue of notice, Sargenti argued the City had actual notice of the dangerous condition because the City admitted in its interrogatory responses it had placed the asphalt patch at the site in October 2014, and constructive notice because, according an exhibit counsel for Sargenti attached to his declaration, the "asphalt patch can be seen via Google Street [View] as far back as March 2015." And finally, Sargenti argued that the City was not a third party beneficiary of Sargenti's user agreement with the scooter rental company and that, even if it was, the exculpatory provisions were invalid as against public policy.

C. *The Trial Court Grants the City's Motion for Summary Judgment*

The trial court denied the City's motion for summary judgment on the first and second grounds, but (after supplemental briefing) granted the motion on the third. The court ruled that there were triable issues of material fact regarding whether Sargenti was operating the scooter with due care and that there was no evidence he was "alcohol impaired" at the time of the accident. The court also ruled, on the issue of notice, that while the City did not have actual notice of the asphalt patch, there was a triable issue of material fact regarding

5

whether the condition "existed for a sufficient period of time to establish constructive notice."  In particular, the court ruled Sargenti created a triable issue of material fact on constructive notice because his attorney submitted "a screen shot of a Google Maps image purportedly depicting the subject driveway in March of 2015," five years before the accident.  In overruling the City's objections to this exhibit, the trial court cited *Sweetwater*, *supra*, 6 Cal.5th 931 and stated "trial counsel can cure the foundational defects at trial."

Nevertheless, the trial court ruled that the City was a third party beneficiary of the agreement between Sargenti and the scooter rental company; that the wavier, release, and other exculpatory provisions of the rental agreement did not violate public policy under the Supreme Court's decision in *Tunkle v. Regents of University of California* (1963) 60 Cal.2d 92; and that the rental agreement was not unconscionable.  The trial court, therefore, granted the City's motion for summary judgment.  The court entered judgment in favor of the City, and Sargenti timely appealed.

## DISCUSSION

After the trial court entered judgment in favor of the City, the Supreme Court held in *Whitehead v. City of Oakland* (2025) 17 Cal.5th 735 that a release and waiver provision discharging the organizers of a charity bicycle ride, as well as public entities providing facilities for the ride, from liability for negligence was unenforceable as against public policy under Civil Code section 1668, "to the extent it purports to relieve the [public entities] of liability for negligently violating a statutory duty

6

relating to public safety." (*Id*. at p. 739.)  The Supreme Court held "agreements to exculpate a party for future violations of statutes designed to protect public safety are unenforceable."  (*Id*. at p. 751.)  Sargenti argues the trial court's ruling on the City's third ground for seeking summary judgment—that the release, waiver, and other exculpatory provisions in the scooter rental agreement did not violate public policy—cannot stand under *Whitehead*.

On the first and second grounds for the City's motion for summary judgment, that Sargenti's use of the electric scooter barred his complaint and that the City did not have actual or constructive notice of a dangerous condition, Sargenti's opening and reply briefs say . . . nothing.  Though the City argues in its respondent's brief it is entitled to summary judgment on these grounds, Sargenti refuses to address the City's alternative arguments in his reply brief, instead relying exclusively on section 437c, subdivision (m)(2).  Sargenti's risky strategy is based on an incorrect reading of the statute.

A. *Sargenti's Reliance on Section 437c, Subdivision (m)(2), Is Misplaced, but We Allow the Parties To Submit Supplemental Briefing*

Section 437c, subdivision (m)(2), states in relevant part: "Before a reviewing court affirms an order granting summary judgment or summary adjudication on a ground not relied upon by the trial court, the reviewing court shall afford the parties an opportunity to present their views on the issue by submitting supplemental briefs. . . .  If the court fails to allow supplemental briefs, a rehearing shall be ordered upon timely petition of a party."  Sargenti argues that, "unless and until this Court itself

7

affords an opportunity to brief the issues not relied on by the trial court in granting summary judgment, then those issues should not be used to affirm the summary judgment."

This court, however, did afford Sargenti an opportunity to brief the two issues the trial court did not rely on:  He had the opportunity to file a reply brief.  (See *Altizer v. Coachella Valley Conservation Com.* (2023) 94 Cal.App.5th 749, 753, fn. 4 [affirming summary judgment on a ground not relied on by the trial court without supplemental briefing, where the parties "thoroughly briefed the issue below and before this court"]; *Bains v. Moores* (2009) 172 Cal.App.4th 445, 470, fn. 39 [parties were provided "an opportunity to present their views on the issue" within the meaning of section 437c, subdivision (m)(2), where the "[d]efendants directly addressed the issue in their briefs, and plaintiffs addressed it in their reply brief"].)  Sargenti asserts: "Just because the City elected to brief the issues in its Respondent's Brief does not require [Sargenti] to now brief them in his reply brief and thereby forego the protections of that section."  Actually, it does.  (See *Hooked Media Group, Inc. v. Apple Inc.* (2020) 55 Cal.App.5th 323, 336, fn. 1 ["Because [the appellant] has been afforded an opportunity to present its views, no supplemental briefing is required."]; *Sharufa v. Festival Fun Parks, LLC* (2020) 49 Cal.App.5th 493, 501, fn. 2 ["we can affirm on a ground not reached by the trial court so long as the parties have been provided an opportunity to brief the issue"]; *Flores v. Enterprise Rent-A-Car Co.* (2010) 188 Cal.App.4th 1055, 1072, fn. 10 [section 437c, subdivision (m)(2), does not apply where the appellants had "the opportunity to present their views on the issue in their reply brief filed" after the respondent's brief, "but

. . . did not do so"].)[2]  Nevertheless, we concluded that in this situation it was appropriate to give the parties another opportunity "to present their views on the issue by submitting supplemental briefs."  (§ 437c, subd. (m)(2).)

B.  *The Trial Court Did Not Err in Granting the City's Motion for Summary Judgment*

1.  *Applicable Law and Standard of Review*

"The Government Claims Act . . . provides for direct liability on the part of public entities for injuries caused by maintaining dangerous conditions on their property when the condition 'created a reasonably foreseeable risk of the kind of injury which was incurred' and either an employee's negligence or wrongful act or omission caused the dangerous condition or the entity was on 'actual or constructive notice' of the condition in time to have taken preventive measures.  [Citations.]

---

[2]  *Juge v. County of Sacramento* (1993) 12 Cal.App.4th 59, cited by Sargenti, is distinguishable.  The court in *Juge* held that, "when the trial court grants a summary judgment motion on a ground of law not explicitly tendered by the moving party, due process of law requires that the party opposing the motion must be provided an opportunity to respond to the ground of law identified by the court and must be given a chance to show there is a triable issue of fact material to said ground of law."  (*Id.* at p. 70.)  *Juge* involved an order granting a motion for summary judgment on an argument the moving party did not make ("i.e., a ground of law identified by the trial court rather than by the movant" (*id.* at p. 62)), not an argument the moving party made but the trial court did not reach.  *Juge* did not discuss or mention section 437c, subdivision (m)(2).

9

A dangerous condition is one that 'creates a substantial . . . risk of injury' when the property is 'used with due care in a manner in which it is reasonably foreseeable that it will be used.'" (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347-348.)

Government Code section 835 states: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." Government Code section 835.2 provides in relevant part: "(a) A public entity had actual notice of a dangerous condition within the meaning of subdivision (b) of Section 835 if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character. [¶] (b) A public entity had constructive notice of a dangerous condition within the meaning of subdivision (b) of Section 835 only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character."

Thus, to "establish liability under section 835, the plaintiff must show: '(1) "that the property was in a dangerous condition at the time of the injury"; (2) "that the injury was proximately caused by the dangerous condition"; (3) "that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred"; and (4) either (a) that a public employee negligently or wrongfully "created the dangerous condition" or (b) that "[the] public entity had actual or constructive notice of the dangerous condition under section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."'" (*Tansavatdi v. City of Rancho Palos Verdes* (2023) 14 Cal.5th 639, 652-653.) "The plaintiff bears the burden of establishing either that the public entity negligently or wrongly created the dangerous condition or that the entity had notice of the dangerous condition for a long enough time to protect against the danger." (*Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1126.)

"'A public entity has "actual notice of a dangerous condition" if it has (1) "actual knowledge of the existence of the condition" and (2) "knew or should have known of its dangerous character."' [Citation.] To establish actual notice, there must be 'some evidence' the public entity's employees 'had knowledge of the particular dangerous condition in question.'" (*Maksimow v. City of South Lake Tahoe* (2024) 106 Cal.App.5th 514, 523.) "A public entity will be charged with constructive notice of a dangerous condition only if (1) the dangerous condition existed for a sufficient period of time before the plaintiff's injury, and (2) it was sufficiently obvious that the entity acted negligently in not discovering and repairing it." (*Martinez v. City of Beverly*

11

*Hills* (2021) 71 Cal.App.5th 508, 514.)  Thus, constructive notice "'has two threshold elements.  [Citation.]  A plaintiff must establish that the dangerous condition has existed for a sufficient period of time and that the dangerous condition was obvious.'" (*Maksimow*, at p. 524.)

"'On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained. [Citation.]' [Citations.]  A motion for summary judgment is properly granted 'if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (*Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 813.)  ""We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained."'" (*Hampton v. County of San Diego*, *supra*, 62 Cal.4th at p. 347.)  "The standard of review for assessing the court's evidentiary rulings in the summary judgment context is not fully settled"; the "Supreme Court has declined as yet to address the issue." (*De Meo v. Cooley LLP* (2025) 115 Cal.App.5th 17, 28; see *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535 ["we need not decide generally whether a trial court's rulings on evidentiary objections based on papers alone in summary judgment proceedings are reviewed for abuse of discretion or reviewed de novo"].)

### 2. *The City Did Not Have Actual Notice of a Dangerous Condition*

In support of its motion for summary judgment, the City submitted the declaration of its superintendent of street maintenance for the Public Service Bureau, Public Works Department. The superintendent stated that, in response to Sargenti's government claim and to discovery in the litigation, "the City investigated whether any complaints, calls-for-service or any documents existed regarding the subject asphalt patch and the subject location of the incident." The superintendent described the City's procedures for "receiving or obtaining notifications or any information as it relates to alleged dangerous conditions on the City sidewalks or streets," which included complaints or requests for service received from phone calls and the City's website and web-based application and observations by City Public Works crewmembers in the field. The superintendent reported the City had no "record, log, or document concerning the subject asphalt patch and location of the incident that is the subject of this lawsuit." He added that the "asphalt patch in question also differs in the manner in which it was constructed from how the City Public Works generally performs driveway apron asphalt patching" and that, because "the subject asphalt patch is on a driveway that provides ingress and egress to the parking lot" of a convention center managed and operated by a third party, "the City would have no reason to perform a subject asphalt patch." This evidence met the City's burden on summary judgment to show it did not have notice of the alleged dangerous condition.

To create a triable issue of material fact on actual notice, Sargenti cited the City's responses to his special interrogatories,

13

which stated "a City employee placed the subject asphalt patch on October 7, 2014, for street improvement." Sargenti argued that, because the City "placed and created the dangerous condition," the City had actual notice. And creating a dangerous condition will, at a minimum, create an issue of fact regarding whether a public entity may be liable under Government Code section 835. (See *Tansavatdi v. City of Rancho Palos Verdes*, *supra*, 14 Cal.5th at p. 653 ["section 835 expressly authorizes two different forms of dangerous conditions liability: an act or omission by a government actor that *created* the dangerous condition (§ 835, subd. (a)); or, alternatively, failure 'to protect against' dangerous conditions of which the entity had notice"].)

The problem for Sargenti, however, was that the City's original interrogatory responses were a mistake, which the City corrected by serving amended responses several months before the City filed its motion for summary judgment. The City's amended responses stated the City "did not pour the subject asphalt patch," had "no record or knowledge of being responsible for pouring the subject asphalt patch," had "no record or knowledge of any City employee pouring the subject asphalt patch," and had "no knowledge of when, or by [whom], the asphalt was poured." Sargenti did not submit the City's amended interrogatory responses in opposition to the motion for summary judgment or disclose the City had amended its responses. As the trial court ruled, Sargenti did "not acknowledge or otherwise deal with the City's amended responses," provide any "evidence to the contrary," or "contest the conclusion arising from the amended responses that the City did not have actual notice."

Sargenti argues in his supplemental brief that, "while the City was entitled to correct its original interrogatory answers, by

14

doing so it could not render those original answers a nullity" and that the City's "original interrogatory answers remain admissible and therefore are sufficient to create a triable issue of fact as to whether it created the dangerous condition . . . ." Sargenti's argument fails for two reasons. First, he did not make it (or even mention the City had served amended responses) in opposition to the City's motion for summary judgment, thus forfeiting the argument. (See *Kime v. Dignity Health, Inc.* (2024) 101 Cal.App.5th 708, 721 [arguments not raised in opposition to a motion for summary judgment are forfeited]; *Howard v. Accor Management US, Inc.* (2024) 101 Cal.App.5th 130, 134 [plaintiff forfeited her argument the defendant had notice of a defective condition "because she never presented this issue to the trial court"]; *Miller v. Pacific Gas & Electric Co.* (2023) 97 Cal.App.5th 1161, 1170 [plaintiff forfeited an argument the reviewing court should reverse an order granting a motion for summary judgment by failing to make the argument in trial court]; *Jackpot Harvesting Co., Inc. v. Superior Court* (2018) 26 Cal.App.5th 125, 155 ["arguments not raised in summary judgment proceedings" are forfeited].)

Second, it was undisputed that the City's original responses were simply a mistake and that the amended responses were correct. (See § 2030.310, subd. (a) ["Without leave of court, a party may serve an amended answer to any interrogatory that contains information subsequently discovered, inadvertently omitted, or mistakenly stated in the initial interrogatory."].) The City's amended responses explained its original responses "were inadvertently premised on the wrong work order request" and were the result of "an inadvertent error which occurred as a result of referencing the wrong inspection and order request . . . ."

The City submitted the work order (No. 511253), which was for a different address on the same street. Sargenti did not present any evidence, such as deposition testimony of City officials, additional work orders, or other documentation suggesting the City had done the asphalt patching, that the City's original responses were correct, or that the City's amended responses were incorrect. True, as Sargenti points out, section 2030.310, subdivision (a), states that, "[a]t the trial of the action, the propounding party or any other party may use the initial answer . . ., and the responding party may then use the amended answer." But that does not mean the propounding party can create a triable issue of material fact in opposing a motion for summary judgment without citing any evidence to dispute the facts in the amended interrogatory response. Sargenti provides no authority for his position that serving an amended interrogatory response is always "sufficient to create a triable issue of fact" or that, once a responding party amends an interrogatory response, that party can never obtain summary judgment.

### 3. *The City Did Not Have Constructive Notice of a Dangerous Condition*

That leaves constructive notice. Sargenti argues the City "had constructive knowledge of the dangerous condition" because the asphalt patch is visible in a Google Street View screenshot attached to his attorney's declaration that Sargenti claims represents what the street looked like in March 2015,[3] almost

---

[3] "Google Street View is a feature embedded within [the] Google Maps program that offers panoramic views of various positions along streets using photos taken from a fleet of specially

16

five years before the accident.  (See *Nicholson v. City of Los Angeles* (1936) 5 Cal.2d 361, 365 ["the existence of a conspicuous defect or dangerous condition of a street or sidewalk for a considerable length of time will create a presumption of constructive notice"].)  Counsel for Sargenti stated in his declaration:  "Attached as Exhibit E is a true and correct copy of a screen shot of Google Street view of the area where the subject incident occurred in March of 2015."

The City objected to the admissibility of the screenshot on several grounds, including that it was not authenticated and lacked foundation.  The City stated that a screenshot "is a 'writing' and must be authenticated to be admissible into evidence" and that "the declarant who has personal knowledge needs to demonstrate how the exhibit was obtained, how they identified it, and who identified it."  The City argued:  "Not only does [counsel for Sargenti's] declaration lack this required information, [counsel] does not have the requisite personal knowledge as to the images found on Google Earth and cannot in any way know whether the photograph of the street view of the incident location in 2015 is what it purports to be.  [Sargenti] also did not offer any declaration [or] any other evidence from Google to support authentication of the screenshot."

The trial court agreed with the City that the Google Street View screenshot was "not properly authenticated."  The court ruled, however, that under *Sweetwater*, *supra*, 6 Cal.5th 931

---

adapted vehicles commonly known as Google Street View vehicles."  (*In re Google Inc. Street View Electronic Communications Litigation* (N.D. Cal. 2011) 794 F.Supp.2d 1067, 1070-1071.)

"inadmissible evidence may be considered in ruling on a motion for summary judgment if the defects can be cured at trial" and that counsel for Sargenti might be able to cure the foundational defects at trial. Because the Google Street View screenshot was the only evidence the asphalt patch existed for a significant period of time, whether Sargenti created a triable issue of material fact on constructive notice depends on the admissibility of that exhibit.

Section 437c "has always required the evidence relied on in supporting or opposing papers to be *admissible*." (*Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 542; see § 437c, subd. (d) ["Supporting and opposing affidavits or declarations shall be made by a person on personal knowledge, shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavits or declarations."]; *Restivo v. City of Petaluma* (2025) 111 Cal.App.5th 267, 279 ["A party cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact." (internal quotation marks omitted)]; *Bowen v. Burns & McDonnell Engineering Co., Inc.* (2024) 103 Cal.App.5th 759, 769 [same]; *Champlin/GEI Wind Holdings, LLC v. Avery* (2023) 92 Cal.App.5th 218, 226 ["Admissible evidence is required to show that disputed issues of material fact exist."]; *Degala v. John Stewart Co.* (2023) 88 Cal.App.5th 158, 167 [same]; *Taylor v. Financial Casualty & Surety, Inc.* (2021) 67 Cal.App.5th 966, 994 ["evidence must be admissible to create a triable issue"].) *Sweetwater*, *supra*, 6 Cal.5th 931, relied on by the trial court to overrule the City's evidentiary objections, did not change that rule.

18

*Sweetwater* was not a summary judgment case; it involved a special motion to strike under section 425.16, commonly called an anti-SLAPP motion. The Supreme Court in *Sweetwater* addressed the "narrow question" of "what kind of evidence a court may consider in ruling on a pretrial anti-SLAPP motion in determining a plaintiff's probability of success." (*Sweetwater*, *supra*, 6 Cal.5th at p. 937.) The Supreme Court held that, "at the second stage of an anti-SLAPP hearing, the court may consider affidavits, declarations, and their equivalents if it is reasonably possible the proffered evidence set out in those statements will be admissible at trial," but that, "if the evidence relied upon *cannot* be admitted at trial, because it is categorically barred or undisputed factual circumstances show inadmissibility, the court may not consider it in the face of an objection." (*Id.* at p. 949.)

Because "*Sweetwater* concerned the consideration of evidence in connection with an anti-SLAPP motion," the Supreme Court's "reasoning was based, in part, on the procedural nature and underlying policies of the anti-SLAPP process. For example, emphasizing that an anti-SLAPP motion is filed at the outset of litigation, the court reasoned: 'The [anti-SLAPP] law's central aim is "screening out meritless claims that arise from protected activity, before the defendant is required to undergo the expense and intrusion of discovery." [Citation.]' [Citation.] Given this timing, '[t]o strike a complaint for failure to meet evidentiary obstacles that may be overcome at trial would not serve the SLAPP Act's protective purposes. Ultimately, the SLAPP Act was "intended to end meritless SLAPP suits early without great cost to the target" [citation], *not* to abort potentially meritorious claims due to a lack of discovery.'" (*Murphy v. Pina* (2025) 115 Cal.App.5th 305, 314-315.) The Supreme Court observed

19

section 425.16 allows the trial court to consider affidavits and declarations as an exception to the hearsay rule for purposes of ruling on a special motion to strike. (*Sweetwater*, *supra*, 6 Cal.5th at p. 942.) Thus, the Supreme Court concluded, the court could also consider testimony under oath from a grand jury proceeding in another case because such testimony had similar indicia of reliability. (See *id*. at pp. 942-943 ["sworn testimony is at least as reliable as an affidavit or declaration"].)

The Supreme Court acknowledged "important differences" between anti-SLAPP motions and summary judgment motions, including that "an anti-SLAPP motion is filed much earlier and before discovery." (*Sweetwater*, *supra*, 6 Cal.5th at p. 945.) Unlike a summary judgment motion, where the plaintiff usually has several months after the defendant files the motion to take additional discovery (see § 437c, subds. (a)(2), (b)(2)), as well as the right under section 437c, subdivision (h), to seek a continuance of the hearing to obtain still more discovery, in opposing an anti-SLAPP motion "it may not be practicable for a plaintiff to obtain declarations from various witnesses, particularly those associated with the defense." (*Sweetwater*, at pp. 943-944.) The Supreme Court stated, however, "to the extent both schemes are designed to determine whether a suit should be allowed to move forward, both schemes should require a showing based on evidence potentially admissible at trial presented in the proper form." (*Id*. at p. 945)

Did the Supreme Court in *Sweetwater* change the law governing admissibility of evidence submitted in support of and in opposition to motions for summary judgment? It did not. Had the Supreme Court intended to change the requirement that a party opposing a motion for summary judgment must create a

20

triable issue of material fact with admissible evidence, the Supreme Court would have said so, overruled *Perry v. Bakewell Hawthorne, LLC*, *supra*, 2 Cal.5th 536 and its progeny, and ignored the language in section 437c, subdivision (d), requiring the opposing party to "set forth admissible evidence."  Instead, the Supreme Court in *Sweetwater* "favorably cited" its decision in *Perry* (*Murphy v. Pina*, *supra*, 115 Cal.App.5th at p. 316) and acknowledged section 437c, subdivision (d), requires admissible evidence.  (*Sweetwater*, *supra*, 6 Cal.5th at pp. 945, 948.)

Sargenti seeks to use the reasoning of *Sweetwater* to support the trial court's decision to consider the Google Street View screenshot that, as the court found, lacked authentication and foundation.  He argues the trial court properly considered the screenshot as evidence the asphalt patch he encountered in January 2020 was there in 2015.  Sargenti, however, reads the Supreme Court's decision in *Sweetwater* too broadly by seeking to apply the Supreme Court's dicta both outside the anti-SLAPP context and beyond the scope of reliable evidence such as grand jury testimony, declarations, and affidavits under oath.  Considering sworn testimony, statements under oath, or other similarly reliable evidence in opposition to an anti-SLAPP motion (as the Supreme Court did in *Sweetwater*) is one thing.  Considering a random screenshot of a Google Street View image purporting to show conditions that may have existed in the past (here, five years ago) in opposition to a motion for summary judgment (as the trial court did) is quite another.  (See *Murphy v. Pina*, *supra,* 115 Cal.App.5th at p. 315 ["Unlike the evidence at issue in *Sweetwater*, [the defendant's] purported statements were not sworn testimony or statements made under oath."]; *Sanchez v. Bezos* (2022) 80 Cal.App.5th 750, 775 ["*Sweetwater* makes clear

21

the importance that statements considered for anti-SLAPP purposes be given under oath or penalty of perjury," and "when competent witnesses attest under oath or penalty of perjury to certain events, there is sufficient reason to conclude, for anti-SLAPP purposes, that admissible evidence of those events exists"]; see also *Wong v. Stillwater Ins. Co.* (2023) 92 Cal.App.5th 1297, 1326 [rejecting the argument the trial court could consider an unsigned out-of-state deposition transcript in opposition to a motion for summary judgment because "it would mean that regardless of the hearsay, regardless of its source, a person opposing summary judgment could 'testify' as to some hearsay and then search for something admissible to support it at trial," which "cannot be the law"].)

Moreover, counsel for Sargenti did not even try to authenticate or provide foundation for the Google Street View screenshot after the City (correctly) objected to its admission. (See *Sweetwater*, *supra*, 6 Cal.5th at p. 949 ["If an evidentiary objection is made, the plaintiff may attempt to cure the asserted defect or demonstrate the defect is curable."].)  If, as the trial court stated, the "foundational defects" were curable, counsel for Sargenti made no attempt to cure them.  Counsel never stated, in his declaration or otherwise, who took the screenshot, when that person took it, what that person did to find the Google Street View image, or how that person ensured his or her screenshot accurately represented the sidewalk in 2015.  And counsel had time to obtain that information (or at least time to try to obtain it), given the four months between when the City filed its motion for summary judgment and Sargenti filed his opposition.  (See *Sweetwater*, at pp. 943-944 [comparing the time available to oppose an anti-SLAPP motion at the outset of litigation to the

22

time available to oppose a motion for summary judgment and conduct necessary discovery].)

## DISPOSITION

The judgment is affirmed. The City is to recover its costs on appeal.

SEGAL, Acting P. J.

We concur:

FEUER, J.

GIZA, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.